The opinion of the court was delivered by
Monroe, J.
The city of New Orleans filed a petition in the Civil District Court, which fell to Division “B”, praying to be put in possession of lots “1” and “2” in the square 308, bounded by Girod, Franklin, Basin, and Lafayette streets, in New Orleans, alleging that it became the purchaser thereof from Edward Hansen, at a public sale, made by it, January 18th, 1890, for delinquent taxes of 1886 and 1887, as evidenced by an adjudication, of that date, and an act of sale before Taylor, Notary, of date March 23rd, 1891. A writ of possession was accordingly issued, and, thereupon, Hansen enjoined, upon the grounds:
That he is the owner of lots “20’ ’and “21”, in the square mentioned, and that under the writ, as issued, notice demanding possession has been served on him with the intention of dispossessing him of said lots.
*1074 That the tax sale under which the city claims ownership was attacked by him in the suit entitled “Edward Hansen vs. Victor Mauberret, Sheriff”, filed in the Civil District Court, August 30, 1895; that the city was therein enjoined from disturbing his possession of said property; that said injunction is still pending, in Division “E” of the Civil District Court, and that the writ of possession herein was therefore issued improvidently, and in violation of said injunction; that said tax sale is void, for the reasons, that the assessment for 1882 was made in the name of John Cousley, who was dead at the time, and that there was no description sufficient to identify said property. That for the years 1886 and 1887 said property was erroneously assessed by a wrong description, and said assessments were annulled by judgments, but that, notwithstanding said assessments were thus annulled and cancelled, the City Treasurer proceeded thereunder and made the alleged sale under which the city now claims; that no notice or demand was made, for the payment of the taxes, prior to said alleged sale, and that the property was not advertised once a week, for thirty days, as required by law. He prays for the perpetuation of the injunction, and for judgment decreeing the nullity of the title set up by the city, and of the alleged assessments upon which it is based.
To this the city answers, denying that the injunction previously issued restrained it from proceeding to take possession of the property as owner, denying that the assessments for 1886 and 1887 have been annulled or cancelled, and alleging that the assessment for 1882, made in 1881, was valid, for the reason that the plaintiff in injunction acquired the property, from Cousley, June 2, 1881, during the life of said Cousley and after the assessment had begun. She also pleads the prescription of three, five and ten, and other years.
There was judgment annulling the title under which the city claims, perpetuating the injunction, and quieting Hansen in his possession, but rejecting the demand for the cancellation of the assessments of 18S2, 1886, and 1887. From this judgment, the city appealed and the plaintiff in injunction has answered the appeal, praying an amendment of the judgment in so far as it rejected the demand for the cancellation of the assessments.
The judge a quo does not specifically pass upon the question, whether, in view of the pendency, in Division “E”, of the suit entitled “Edward Hansen vs. Victor Mauberret, Sheriff”, he could properly proceed with the case before him. It does not appear, however, that any *1075 request for a ruling upon that point, as a preliminary to a trial on the merits of the ease, was made, or that an objection was made to the trial upon the merits, nor has the point been pressed in this court; the plaintiff in injunction praying an affirmance of the judgment appealed from. We.will therefore consider it waived, and deal with the case, as decided by the judge a, quo, upon its merits.
As to the assessment of 1882.
The tax deed filed in evidence shows that the property was not sold for the tax of 1882, but for the taxes of 1886, and 1887, with interest and costs. The invalidity of the assessment for the taxes of 1882, if such invalidity exists, would not therefore constitute a cause of action for the purposes of the attack upon the title set up by the city and of the injunction against the writ of possession based on that title.
As to the assessments of 1886 and 1887.
Plaintiff in injunction offered in evidence records in suits Nos. 18,889 and 22,385 of the Oivil District Court, being suits brought by Hansen against the Board of Assessors. There was an objection of irrelevancy, which was sustained.
The ruling was correct. The suits were for reductions of' assessments on various pieces of property, but did not include the property here in controversy, and the records are irrelevant.
As to the notice required by Article 210 of the Constitution of 1879.
Plaintiff in injunction denies under oath that he received such notice. Upon the other hand, the city produced what is called a “Tax Notice Book”, shown to be part of the records of the “Back Tax Bureau”, of the Treasury Department of the city of New Orleans. In this book were stubs, bearing the name of Hansen, the plaintiff in injunction, and to these stubs were pasted the original notices which had, apparently, been taken from them, served upon Hansen, and returned, including a notice with reference to the property in question, dated August 9, 1889, addressed to Edward Hansen, informing him that the taxes of 1886 and 1887, upon the two lots in question, amounting to $66.00 and $60.00, respectively, were unpaid, and delinquent, that they bore interest, and that, after the expiration of twenty days from the service of the notice, unless payment was made, the property would be advertised and sold. This notice, a copy of which is filed in evidence, bears the signature of J. N. Hardy, City Treasurer, and what purports to be a return of service, in the following language, to-wit:
*1076 “Served Aug'. 9, ’89, on Edw. Hansen in person.”
“S. F. Moore, S. C.”
It has also written upon the face of it, the following-: “Please extend to Oct. 20, ’89. A. P. Harrison, Treas. Ad Int.” And conspicuously-printed upon its face are the words, “Bring this notice with you."
It was objected that -this notice was inadmissible, for the reason that S. F. Moore, who was supposed to have been the “Service Clerk”, by whom it purported to have been served, was not produced, his signature was not proved, and there was no law making the document, as it stood, admissible in evidence. There would, no doubt, be great force in this objection if the offer had no other support than such as has been stated, but there is something more.
W. IT. Michel, sworn for the city, testifies that in 1889, he was employed in the “Back Tax Bureau” of the City Treasurer’s office; he identifies the “Tax Notice Book”, as a record of that office, and his testimony then proceeds as follows, to-wit:
“Q. How did these notices get pasted in that book?
“A. I attached them, to that book, sir.
“Q. Where did you get them from?
“A. From the treasurer ad interim. They came to me by Mr. Hansen.
“Q. This Mr. Hansen?
“A. Yes, sir; and I indorsed them ‘Not advertised’. They were taken to the Treasurer’s office. The Treasurer asked an extension of time. I made the extension; put in ‘Do not advertise’, and I attached them to the book, to show my authority for the extension.
“Q. And you know that Mr. Hansen brought the notices back ?
“A. I do, sir.
“Q. This Mr. Hansen? (pointing to the plaintiff:).
“A., Yes, sir.
“On cross-examination.
“Q. Mr. Hansen brought them in?
“A. Yes, sir; he had evidently been in the treasurer’s office, and Mr. Harrison had sent him over to me.”
We find this testimony in the transcript No. 13,084, (being the transcript of the appeal in the ease of Edward Hansen vs. Victor Mauberret, Sheriff, et als.), concerning which the parties litigant have placed the following agreement in the record in the instant case, to-wit:
*1077 “It is agreed in this ease, that record No. 46,920 on tie docket of “ this court, entitled Edward Hansen vs. Vic. Mauberret and the City “ of New Orleans, offered in evidence by Edward Hansen, need not be “ copied in the transcript; and that the transcript of said suit now on “ file in the Supreme Court of the State of Louisiana shall be used in “ said Supreme Court, in connection with the transcript of appeal in “ this case, the same as if copied herein.”
That there was some further extension (whether intentional or accidental, does not appear), beyond that thus asked by the Treasurer ad interim,, is evident, since it is otherwise shown that the property was first advertised December 17, 1889.
Hansen’s testimony, on the subject, is as follows:
“Q. Did you ever receive from Joseph N. Hardy, previous to that sale and adjudication, any notice of demand for the taxes for which that sale appears to have been made?
“A. No, sir.”
Cross-examination.
“Q. Where were you, Mr. Hansen, on the 9th day of August, 1889 ?
“A. What is that?
“Q. Where were you on the 9th of August, 1889 ?
“A. In 1889, I was in New Orleans.
“Q. And you say that you did not receive a notice that your property was going to be seized and sold, unless the taxes of 1886 and 1887 were paid to the city of New Orleans; yes or no ?
“A. No, sir.
“Q. You state positively that you did not?
“A. I did not.
“Q. Whereabouts in New Orleans were you, on that day, August 9, 1889?
“A. I have been in New Orleans since 1852, and I suppose I was-there then.”
We have, therefore, the positive, affirmative testimony, of a disinterested witness, to the effect that Hansen had the notice in his possession, and turned it over to the witness, and that the witness pasted it back on the stub in the Tax Notice Book, where it was found; together with his explanation as to why this was done, all of which is entirely corroborated by the appearance and indorsements on the notice, and its surroundings when found, in its proper place, as a public archive, in a public office.
*1078 And, as against this, we have the bare denial of the party plaintiff, with reference to the receipt, or non-receipt, nine years before, of a notice such as, being the owner of a number of pieces of property, he probably received not infrequently.
We think the evidence in the affirmative preponderates, and that the requisite notice is brought home to the plaintiff in injunction.
As to the advertisement.
It is claimed that the property was not advertised once a week for thirty days. The evidence shows that the advertisements appeared upon Tuesday, December 17th, Tuesday, December 24th, Tuesday, December 31st, 1889, and upon Tuesday, January 7th, and Saturday, January 18th, 1890. The two last advertisements, concerning the interval between which the complaint is made, appeared, therefore, in two consecutive calendar weeks, and there were five advertisements within the thirty days proceeding the sale.
The law of the case (Constitution, Article 210, O. C. 1117, Act No. 104 of 1878, p. 157) is to the effect that “as for those advertisements, for which the .term óf thirty days is fixed, it suffices, if they are published in a daily paper, once a week during .that time”. In a case aiming under an act of'Congress similar in its terms to our law, except that it required the advertisement to be made once a week for three months, it appeared that there were three intervals, between advertisements, of eight,, ten, and eleven days, respectively, and the Supreme Court of the United States said, upon the subject:
“ In examining the dates of the publication, it appears that eleven “ days at one time ,transpired between them, and at another ten days, “ at another eight. These omissions, it is contended, are fatal: that “ the publication being once made, it was essential to the validity of “ the notice that it should be published every seventh day thereafter. “ The words of the law are 'once a week’. Does this limit the publica- “ tion to a particular day of the week ? If the notice be published on “ a Monday, is it fatal to omit the publication until the Tuesday (of “ the week) succeeding? The object of the notice is as well answered “ by such a publication, as if it had been on the following Monday. “ A week is a definite period of time, commencing on Sunday and end- “ ing on Saturday. By this construction, the notice in this case must “ be held sufficient. It was published Monday, January 6, and omitted “ until Saturday, January 18, leaving an interval of eleven dáys; still, “ the publication on Saturday was within the week succeeding the no- *1079 “ tice of the sixth. It would he a most rigid construction of the Act “ of Congress, justified neither by its spirit nor by its language, to say “ that this notice must be published on any particular day of a week. “ If published once a week for three months, the law is complied with; “ and its object effectuated. The circuit court erred on this point, in “ their instruction to the jury.”
Ronkendorf vs. Taylor’s Lessee, 4th Peters, 360.
We concur in this construction, and adopt it for 'the purposes of the case now before us.
The conclusions thus reached render it unnecessary that we should pass on the plea of prescription filed on behalf of the city, and place the question of the validity of the assessment for 1882 as entirely outside of the case presented, of which we have appellate jurisdiction, as though that question had not been raised in the same pleadings.
It is therefore ordered, adjudged, and decreed that, in so far as the judgment appealed from rejects the demand of the plaintiff in injunction for the cancellation of the assessment of 1882* the appeal be dismissed; and in so far as said judgment rejects the demand for the cancellation of the assessments of 1886 and 1887, the same be affirmed, and, in all other respects, that said judgment be annulled, avoided and reversed, that the injunction herein issued be dissolved, and that the demand of Edward Hansen, plaintiff in injunction, be rejected and his suit dismissed at his cost, in both courts.
Rehearing refused.