# Walker *v.* City Council of Montgomery.

*Action by Municipality to recover License Tax.*

1. *Constitutional law; validity of statute; entry upon Journal of House.*—Under section 62 of the Constitution of 1901, providing that "no bill shall become a law until it shall have been referred to a standing committee of each house, acted upon by such committee in session, and returned therefrom, which facts shall affirmatively appear upon the Journal of each house," a decision in the committee to report a bill referred to it, back to the house "without recommendation" is for all constitutional and legislative purposes "action" by the committee.

2. *Same; same; same; how fact of committee being in session shown.*—Section 62 of the Constitution, as above set out, is complied with, in respect to the requirement that the fact of a committee being in session when action is taken on a bill, should affirmatively appear on the Journal, when the Journal shows that the chairman of the committee to which the bill was referred, reported to the House that the committee in session had acted upon said bill.

3. *Same; same; when Journal shows section 62 of the Constitution complied with.*—Section 62 of the Constitution is sufficiently complied with when the Journal of the House, after the entry "Bills on second reading," recites "the chairman of the several standing committees report that the committee in session had acted favorably upon the following bills"; and then follows several bills designated by their number and titles, after which is the following recital: "The above and foregoing bills having been returned to the House, are read a second time and placed on the calendar."

4. *Same; same; same.*—The fact that just after the title to one of the bills as set out in said entry, as above set forth, there is a statement that said bill "is reported without recommendation and placed upon the calendar," does not show that there was no competent action by the committee upon said bill.

and as to such bill the Journal shows a strict compliance with section 62, both as to what was done and as to what should appear as to what had been done.

APPEAL from the City Court of Montgomery.

Tried before the Hon. A. D. SAYRE.

This was an action brought by the City Council of Montgomery against J. Lee Walker, to recover $200 alleged to be due to the plaintiff from the defendant, for his engaging in the business of retailing spirituous, vinous and malt liquors within the corporate limits of the city of Montgomery, without paying a license to said city as is provided by ordinance of the city duly and regularly passed.

The defendant interposed several pleas setting up the unconstitutionality of an act of the legislature approved February 18, 1903, entitled an act to alter and re-arrange the boundaries of the city of Montgomery, extending the corporate limits of said city, and that the defendant did not carry on the business of retailer of spirituous liquors within the corporate limits of the city as they were fixed prior to the passage of said act. The principal ground of the unconstitutionality of said act interposed as a defense, and which is reviewed on the present appeal is, that in the passage of said act the legislature of Alabama failed to comply with section 62 of Article IV of the constitution of Alabama of 1901. Issue was joined upon these pleas, and the cause was tried by the court without the intervention of a jury upon an agreed statement of facts, in which the following facts were stated: "That the defendant, J. Lee Walker was engaged in the business of a retailer of liquors, and was selling spirituous, vinous and malt liquors during the month of October, 1903; that the place of business was situated at 384 South Decatur street, in or near the city of Montgomery, Alabama; that the said place of business was within the corporate limits of said city of Montgomery as defined in the bill purporting to have been passed at the session of the legislature of 1903, known as 'Senate Bill 109. To alter and rearrange the boundaries of the city of Montgomery, ex-

tending the corporate limits of said city,' and outside of the corporate limits of the city of Montgomery as they were fixed by law before the passage of said bill and as they now are, if the said bill is unconstitutional.

"It is further agreed that the city council of Montgomery, prior to the month of October, 1903, duly passed and promulgated an ordinance fixing a license on retail liquor dealers in the city of Montgomery at points outside of the fire limits of said city at $200 per annum; that the point at which defendant was doing business was outside of the fire limits of the city of Montgomery, and that he had not taken out and paid for a license, as required by said ordinance, at the time of the bringing of this suit."

The court rendered judgment for the plaintiff. From this judgment the defendant appeals, and assigns the rendition thereof as error.

J. M. CHILTON, for appellant.—By section 62 of the constitution four facts in reference to each and every bill must affirmatively appear on the Journal of each house before such bill can become a law:

1st. That it was referred to a standing committee; 2d, that it was acted upon by such committee; 3d, that such committee, when it acted upon said bill was in session; 4th, that the bill was returned therefrom. It will be noted that of the four transactions or facts thus mentioned, but one is a transaction that originates in the House itself—that is, that the House could record on its minutes as having its origin and consummation in the body itself, viz.: That the bill had been referred to a standing committee. The other three transactions involved the action of the committee itself. The House could not know, except from a report of the committee, that the measure had been acted upon in the session of the committee, and it required the action of the committee or of its chairman to return the bill to the House.

It is evident that the general heading and recitals of the Journal as to the bill in question did not apply to the bill for the following reasons: 1st. By the very

terms of the heading it is confined to bills that have been favorably acted upon—the committee "had acted favorably upon the following bills." The present bill was *not* acted upon favorably.

2d. The minutes disclose affirmatively that it was intended not to include the present bill under the general heading, because when the present bill is reached there is not only a special statement relative to this bill, but a statement inconsistent with the general heading, viz.: That it was "reported without recommendation." All that does appear is that the bill was reported without recommendation, which may have been the action of the chairman without any committee action at all. The constitution is mandatory, and it is conceded by opposing counsel that if the fact mentioned must appear and does not appear the act is invalid.

RAY RUSHTON and W. M. WILLIAMS, *contra.*—It i insisted by the appellant that four facts shall appear on the Journal of each House before the bill can become a law. As to the first and fourth of these we thoroughly agree. But we do not believe it is necessary, in order that the bill may become a valid law, that the Journal should affirmatively show, *as a fact,* that it was acted on by the committee, in session, for the very good reason that it is impossible for the Journal of either House to show that it was *acted upon* by the committee *in session, as a fact.* The Journal is a record of the proceedings of the House, and is not a record of the proceedings of any committee of the house, or of any other body, and does not purport to be. Anything that it may show as to what took place in a committee is necessarily, therefore, a report of that committee, or some other hearsay proof of the same. The House as a body is certainly not expected to attend the meetings of the committee to record the facts about their actions and keep a record of the same, nor could it do so, for if such an unreasonable thing were expected, it could not be complied with, as the House, while in attendance upon a session of the committee, would not be the House, and no

record taken of the proceedings of the committee would form a part of the Journal of the House, but would, if anything, be a Journal of the committee. If the contention of appellant were correct and it was necessary, under section 62, for the Journal to show, *as a fact*, a thing which it is impossible for it to show, *as a fact*, then it would be impossible for the legislature to enact a law.

The question here is, does the House Journal show affirmatively that the committee, to whom it was referred, "acted upon" the bill "in session." We think it does, and that the report of the committee shows that it was, and that since the report of the committee was the natural way for it to appear on the Journal, that the only question left is what is shown by the Journal to have been the committee's report: We contend that the general heading of the list of bills does have reference to and include S. B. 109, because the title of the bill is set out in full along with the other bills and because the "note" does not direct that S. B. 109 shall be excluded.

We concede that the committee did not recommend the bill favorably, but that does not necessarily mean that they did not act upon it at all. It seems that appellant contends that the committee must either recommend that the bill be passed or rejected, and that if they fail to do this, and, instead, return it without recommendation, they cannot be said to have "acted upon it" within the meaning of section 62 of the constitution. To give that meaning to the words "acted upon" would deprive the legislature of the power to pass bills returned "without recommendation."

The words "acted upon," as used in section 62, do not necessarily mean that the act must be decisive, one way or the other; and any discussion or deliberation, no matter how little, on a bill by the committee in session, and the bill returned "without recommendation" would be a compliance with section 62.—*Yudkins v. Gates*, 60 Conn. 428; *Hartford v. Canaan*, 52 Conn. 166.

In cases where the constitution requires affirmative evidence of the procedure to appear on the Journal,

mere silence will invalidate the bill.—*Walker v. Griffith,* 60 Ala. 361; *State v. Buckley,* 54 Ala. 599. But if the Journal is not silent, but ambiguous, the court should indulge the presumption that the enactment in question is constitutional, until *clearly convinced* to the contrary.—*Zeigler v. S. & N. R. R.,* 58 Ala. 596; *S. & N. R. R. Co. v. Morris,* 65 Ala. 197; *Noble v. Mitchell,* 100 Ala. 531.

In determining the real scope and meaning of a new provision of the constitution, it must be read and expounded in the light of the existing system and in connection with conditions and practices under the administration existing at the time of its adoption.—*Taylor v. Woods,* 52 Ala. 474; *Fox v. McDonald,* 101 Ala. 66.

McCLELLAN, C. J.—Section 20, Art. 4 of the constitution of 1875 was in this language: "No bill shall become a law until it shall have been referred to a committee of each house and returned therefrom." When the Constitutional Convention of 1901 came to deal with this matter of referring bills to committees, etc., it was suggested that certain evil practices had grown up in the conduct of committees of the house in respect of bills referred, and it was sought to eradicate these practices by certain emendations of this section 20 as carried and embodied into the new constitution. The practices in question were specified in the discussion of the subject in the convention. It was said that sometimes bills which had been referred by the House to one committee had, without the sanction of the House, gotten into the possession of and been considered and reported by another and distinct committee, and to prevent this in future a provision was inserted requiring the committee to which the reference had been made to consider, act upon and return the bill to the house. It was also stated that it had become a custom for the members of a committee to which a bill had been referred to be approached individually and singly when the committee was not in session and asked to sign a report of the bill to the house, and for members thus to make a report as and for the

report of the committee without any consideration, discussion or action of or upon the bill by the committee as a committee. To break up·this practice it was provided that a bill referred to a committee must be acted upon by the committee as a body in session. Again it was brought to the attention of the convention that a practice obtained in the legislature to refer local bills to members representing the localities to be affected and for such members to act upon such bills and report them to the house; and to put an end to this evil, the convention added the requirement that every bill should be referred to a *standing* committee. Emphasizing the importance of these new provisions and for the purpose of enforcing their observance, the convention further ordained that the journals of the Houses should affirmatively show certain facts as to a compliance with them. As thus amplified, section 20 of Art. 4 of the former constitution was embodied in the present constitution as section 62, in this language: "No bill shall become a law until it shall have been referred to a standing committee of each house, acted upon by such committee in session, and returned therefrom, which facts shall affirmatively appear upon the journal of such house." In reporting this section to the convention, its committee on Legislative Department made the following statement: "To section 20 [of Art. 4, constitution of 1875] are added the requirements that the reference of bills therein provided for must be to a standing committee of each House, that the action of such committee thereon must be had in session, and that the facts of reference, action in session, and return must affirmatively appear on the journal of each House."

Such is the genesis of section 62 of the constitution of 1901, and such the circumstances of its ordination. With its text illumined by a consideration of the former organic provision, by the report of the convention committee, and by the discussion had upon it in the convention, we come now to interpret it in so far as a correct reading of it is necessary to the decision of the case before us.

[Walker v. City Council of Montgomery.]

Under the provisions of the former constitution in this regard, but two things were necessary to be done: *first,* the reference of the bill to a committee, and *second,* its return from that committee to the House.    No requirement was made as to what the committee should do with the bill while in its possession, or that it would do anything whatever with it.    Of course, the contemplation was that the committee should consider the bill, and report to the House the result of its consideration, and the rules of the respective Houses proceed upon that idea; but nothing of that sort was necessary to the passage of the bill.    And, as there was no requirement that the facts of reference and return should appear affirmatively on the journal, a bill might well become  a law in point of fact without such reference to or return from a committee.    However, the requirement has doubtless been uniformly complied with, and in consonance with the theory and purpose of such references, and with the rules of the Houses, it has been always the practice and custom for committees to make reports on the bills referred to them.    In cases where the committees have no purpose to suggest amendments to bills referred to them, and apart from bills returned to the House for re-reference to another committee, three forms of report have been in common and constant use in the legislature as appears from the journals of the two Houses throughout the years, viz.: one, a report favoring the passage of the bill, another, a report adverse to its passage, and, the third, a report that the committee returns the bill without recommendation; that is, they do not recommend either the passage or rejection of the bill by the House. So far as the status of bills in the House after report is concerned, those favorably reported and those reported "without recommendation" stand upon the same footing, both, upon the coming in of the report, being .read a second time and put upon the calendar.    And this is true even when the rule of the House provides only for the second reading and putting on the calendar of bills favorably reported; the theory of the rule being that all bills not adversely reported are favorably reported for all the purposes of their subsequent legislative status.

From all this one thing clearly appears, to-wit, that the determination of a committee to return a bill to the House "without recommendation" was always, prior to the present constitution, recognized as *action* by the committee upon such bill; and in view of the advantageous status such determination and report gave to the bill in the House, the same indeed as that of a bill favorably reported, there is no ground or reason for saying that it was not essentially and inherently affirmative action by the committee on the bill. We are not aware that this mode of action by committees and the consequence accorded to such committee action by the respective Houses of the Legislature has ever been the subject of complaint or criticism. It has never, we believe, been considered an evil legislative practice. There was no suggestion in the report of the convention committee upon the proposed additions to section 20, Art. IV of the former constitution nor in the discussion thereon in the convention that any change as to this matter was necessary or desirable or was intended to be made. The only change that was proposed or made in respect of committee action, had no reference to the nature of such action, but only to the circumstances under which action should be taken. It was to the effect that whatever action a committee should take on a bill, should be had while the committee was in session. It forbids a committee to act on a bill hereafter unless the body is assembled and acts as a body; but the amended section leaves the committee the same freedom of action while in session that it has heretofore had. The reference in section 62 to action by the committee was necessary to the declaration that it must be had in a session of the committee, and was made for no other purpose. The new provision having, therefore, no bearing upon the character of action to be had by a committee, but only upon the mode, or circumstances of its action, whatever action was within the contemplation of preexisting law and the rules of the Houses, anything, in short, which before the constitution of 1901 was action by a committee within the general usages and practices of the legisla-

tive bodies, is action within the letter and provision of section 62 of that instrument. Upon these considerations we are come to the conclusion that a decision in committee to report a bill to the House "without recommendation" is for all constitutional and legislative purposes "action" by the committee.

It is next to be considered what are the "facts" which said section 62 requires to "affirmatively appear upon the Journal of each House." The report of the convention Committee on Legislative Department throws a guiding light upon this inquiry. It is therein stated what facts it was proposed by the section to have appear upon the journal, and they are three only: The *reference* to a stand committee, action *in session* by it, and *return* to the House. The language of the report, to repeat, is that "the facts of reference, action in session, and return must affirmatively appear on the Journal of each House." The discussion of this matter in the convention disclosed no purpose to, have any other than these three facts appear on the journal, and the section as adopted evinces no intention beyond this.

How shall these facts be made a part of the journal? How shall they appear thereon? The reference is made by the House itself, and is properly shown, can only be shown, indeed, by the journal of its proceedings. Similarly the fact of the return from reference into the House is a thing occurring in the House and of proper, even necessary notation in any accurate setting forth of its proceedings. The only other fact required to appear on the journal in this connection is that the committee was in session when it acted on the bill, that the bill was acted upon by the committee in session. The journal is not the repository of facts occurring outside of the House. Such facts cannot properly be stated thereon as of that body's own consciousness. A fact occurring in a standing committee is beyond the ken of the House, and cannot be known to the House or given record on the minutes of its proceedings unless brought to its knowledge in some recognized way by means which authorizes the House to accept it as a verity. We know of no means by which facts transpiring in a committee, and

the circumstances attending their occurrence in a com-
mittee, can be brought to the knowledge of the House so
as to authorize their acceptance by the House, and the
notation of them by the House as facts upon its journal,
except the report thereof by the committee to the House.
Such is the recognized mode. All action of committees
is then brought to the knowledge of the House. When
so brought, the fact of the action in a given cause is sta-
ted on the journal as being so reported by the commit-
tee, and ever after, in all courts and for all purposes,
the fact so reported stands as a recorded truth. Thus,
and thus only is it known to the House, and, afterwards,
to the courts and to the public, that a given bill has been
acted upon favorably by the committee, or adversely, or
otherwise, as the case may be. If the fact of such action
may be made, can, indeed, be made to appear on the
journal only by the report of the committee to the House,
is there any possible reason for requiring the circum-
stances attending such action in committee, when nec-
essary that a statement of such circumstances should
appear on the journal, to be brought to the attention and
knowledge of the House in some other way, by some
means not specified in the requirement and wholly un-
precedented in and unknown to legislative proceedings?
Is it conceivable that the convention, entirely conver-
sant with this one method of bringing facts occurring
in committee to the knowledge of the House for entry
upon its journal and for action by it upon them as facts
established and proved by its own minutes, could have
intended to require this particular fact of the session
of the committee to be verified to the House by some new
and unheard of means? And this, too, without at all in-
dicating what method should be adopted, or that any
method other than that familiar to its members and for
time out of mind of exclusive use in the legislature,
should be resorted to. We think not. We believe it was
the contemplation and intention of the convention that
the fact of the committee's being in session when action
was taken by it on a bill should be certified to the House
by the committee in its report made for it by its chair-

man, and that such fact should affirmatively appear on the journal as a fact reported by the committee; and we hold that section 62 of the constitution is complied with in this respect when the journal shows that the chairman reported to the House that the committee in session had acted upon the bill.

The question in the case before us is, whether · the journal of the House affirmatively shows a compliance with said section 62 in the passage of Senate Bill 109 : "To alter and rearrange the boundaries of the city of Montgomery, extending the corporate limits of said city." The journal, it is conceded, does affirmatively show that this bill was referred to the committee on Local Legislation, a standing committee of the House. In respect of action in committee on the bill and of the return of the bill to the House, the journal contains the following entries:

"Bills on Second Reading.

"The chairman of the several standing committees reported that the committees, in session, had acted favorably upon the following bills:

"H. 467. To provide for the apportionment and collection of unpaid taxes in any new county formed under the constitution and laws of this State.

"H. 29. To amend subdivision 7 of section 1144 of the Code of Alabama.

"H. 435. To authorize street railway companies in this State to increase their capital stock.

.     *       *       *       *       *       *

*       *       *       *       *       *

"S. 109. To alter and rearrange the boundaries of the city of Montgomery, extending the corporate limits of said city. (Note February 12, S. 109 reported without recommendation and placed upon the calendar.) .

"H. 193. To amend section 3504 of the Code of 1896.

*       *       *       *       *       *

*       *       *       *       *       *

"The above and foregoing bills having been returned to the house were read a second time and placed on the calendar." (We have substituted asterisks in the places occupied in the journal itself by the numbers and titles of many other senate and house bills.)

Upon considerations already adverted to, we are of opinion that these entries upon the journal affirmatively show that senate bill 109 was returned from the committee into the House, and that the action had by the committee was had in a session of the committee.

If it were important to determine what action is shown by the journal to have been taken, two constructions might be put upon the journal entry. There is the general statement that the committees had acted favorably upon all the bills in the list. As to the senate bill 109, there is a particular statement that it was reported back to the House by the committee without recommendation. In a sense both the general and particular statements are true as to this bill. As we have seen, a report of a bill without recommendation is understood and construed in legislation to be so far a *favorable* report as to entitle the bill to the same status in the House as if it had been reported favorably. A bill so reported is read a second time and put on the calendar for third reading and for final vote by the House in all respects the same as a bill which the committee recommends for passage. Therefore, in a legislative sense, there is no inconsistency between the general statement as applied to this and the other bills embraced in this list, to the effect that they had all been acted on favorably by the committees, and the particular statement with reference to this bill, to the effect that it had been reported back without recommendation: For all legislative purposes this bill as well as the others had been acted on favorably by the committee. But if we look at the matter in another way, and concede that the two statements are inconsistent as applied to senate bill 109, it is only that part of the general statement having reference to the *character* of the action of the committee which is inconsistent with the particular statement as to this bill; and, proceeding upon this conclusion, the general statement would be construed to apply to all the bills following it, except in so far as any subsequent statement made in the entry in respect of a particular bill is contradictory of the general statement. The apparent inconsistency here is only as to the *nature* of the action taken, and not at all upon

the fact of action having been taken. The action on senate bill 109 was not favorable to it in the sense of recommending its passage, and hence that part of the general statement cannot apply to that bill. But there is nothing in that particular statement as to S. 109 which is at all inconsistent with the general statement that the chairman reported that the committee in session had acted upon all these bills. So that part of the general statement would stand as applying as well to S. 109 as to the other bills embraced in the entry. So read the whole entry applicable to this bill is in substance this: The chairman of the standing committee reported that the committee in session, had acted upon S. 109. To alter and rearrange the boundaries of the city of Montgomery, extending the corporate limits of said city, and report the same to the House without recommendation. Said bill having been returned to the House, was read a second time and placed upon the calendar. Such action, a report without recommendation, is, as we have seen, action upon the bill by the committee within contemplation of the constitution. Either reading of journal minute in this connection, therefore, shows competent action by the committee upon this bill, and if the constitution required the journal to show affirmatively and as an independant fact, and not merely incidentally, that the committee acted and in a certain way, which it does not, we could still affirm that the House passed senate bill 109 in strict compliance with the requirements of said section 62, both as to what should be done and as to what should appear on the journal with respect to what had been done.

We concur with the city court in holding the act "To alter and rearrange the boundaries of the City of Montgomery, extending the corporate limits of said city," was enacted in consonance with the requirements of section 62 of the constitution.

Affirmed.