# Commissioners Court of Washington County *v.* State *ex rel.* Bowling, *et al.*

## *Prohibition.*

(Decided July 2, 1907. 44 South. 465.)

1. *Counties; County Seat; Removal.*—A place which is not incorporated, but at which there was a post office, store, one residence, a saw mill and another building in course of construction, is a village within the meaning of General Acts 1903, p. 117, authorizing the removal of a county seat to any village, etc., in the county.

2. *Same.*—The fact that two of the county commissioners were stockholders in the corporation which donated to the county a lot on which to build a court house, did not affect the validity of the order for the removal of the county seat.

3. *Same.*—In the absence of a showing that illegal ballots were received which affected the result of the election, the fact that the board of election failed to furnish the inspectors holding the election a certified list of the registered and qualified voters, or the failure of those voting at the election to produce their certificate of registration and the receipt of the tax collector showing the payment of poll tax were mere irreguarities not rendering the election void.

4. *Same.*—Where the vote in an election for the removal of the county seat was favorable to the proposition that it should be removed to a certain place, the orders of the court of county commissioners made in pursuance of the mandate of the statute for the pur-

36 R

[Commissioners Court of Washington County v. State, ex rel. Bowling, et al.]

pose of effectuating the building of the courthouse at the place to which the county seat was to be removed, were not invalid because the orders were made by the commissioners at sittings at the place from which the county seat was to be removed, although Acts 1903, p. 117, provide that the place selected shall thereafter be the county seat.

5. *Same.*—In the absence of a showing that the want of full notice deprived some portion of the electors of their right to vote, which would have changed the result or rendered it doubtful, the fact that publication of notice for the full time required by the statute was not given would not invalidate the election.

6. *Prohibition; Scope of Remedy.*—Prohibition will not lie to prevent legislative acts, nor those of a ministerial, administrative, or executive character.

APPEAL from Washington Circuit Court.

Heard before Hon. SAMUEL B. BROWNE.

Appeal by the court of county commissioners of Washington county from an order of Samuel B. Browne, as judge of the Thirteenth judicial circuit, granting a rule nisi on a petition for prohibition against the court of county commissioners to prohibit the erection of a courthouse and jail at Chatom, to which the county seat had been removed.

GRANADE & GRANADE, and STEVENS & LYONS, for appellant.—Prohibition was not the proper remedy. It is exercised only in the following cases. A. When the inferior tribunal is about to proceed in some matters over which it has no jurisdiction.—*Ex parte Green & Graham*, 29 Ala. 52; *Ex parte Peterson*, 33 Ala. 74; *Atkins v. Siddons*, 66 Ala. 453; *Ex parte Due*, 116 Ala. 491. B. It operates only to restrain future actions and can give no relief whatever against past transactions.—*Ex parte Roundtree*, 51 Ala. 42; 23 A. & E. Ency. of Law, 204; High's Extra. Leg. Rem. § 766. It will not lie to prevent acts of legislative, ministerial, administrative or expective character, but only judicial or quasi judicial. —*Ex parte State*, 89 Ala. 177; *Atkins v. Siddons, supra;*

*State ex rel. Turner v. Bradley*, 134 Ala. 549; 16 Ency.
P. & P. 1102 and 1106. D. It does not lie to prevent any
erroneous exercise of jurisdiction which the court has.—
*Ex parte Mobile, etc.*, 65 Ala. 339; *Ex parte Brown*, 58
Ala. 536; *Ex parte Hamilton*, 51 Ala. 62; *Ex parte
Peterson*, 33 Ala. 74; *Ex parte Keeling*, 50 Ala. 474; *Ex
parte Due, supra; Epperson v. Rice*, 102 Ala. 668.    E.
It lies only where there is no adequate legal remedy.—
Authorities supra. By far the greater duties of the com-
missioners' court are executive or ministerial.—*Com.
Court v. Moore*, 53 Ala. 25; *Grider v. Talley*, 77 Ala.
42; *Jeffersonian Pub. Co. v. Hilliard*, 105 Ala. 578;
*Cameron v. Kingfield*, 57 Cal. 550.    There are other
legal remedies.—*Marengo County v. Matkin*, 134 Ala.
275; *Hand v. Stapleton*, 140 Ala. 555.    The act authoriz-
ing the removal was constitutionally enacted.—*Brown
v. Porter*, 40 South. 144; *Board of Revenue v. Crow*, 37
South. 473; *Walker v. Montgomery City Council*, 139
Ala. 468.    The sufficiency of the petition addressed to
the governor cannot be questioned at this late date.—
*State ex rel. Little v. Langley*, 32 L. R. A. 723.    Chatom
was a village in contemplation of the statute.—8 Words
& Phrases, 7322; 29 A. & E. Ency. of Law, 1059; Web-
ster's Unabridged Dictionary; *Infield v. Jordan*, 119 U.
S. 680; *In re West Philadelphia*, 5 W. & S. 281; *Traux
v. Poole*, 46 Ia. 256; *Way v. Fox*, 109 Ia. 340; 27 Ill. 48;
71 Ill. 568; 91 Wis. 16; 113 Wis. 498; 35 L. R. A. 396;
*A. G. S. R. R. Co. v. Winn*, 103 Ala. 104.    The fact that
two of the commissioners were stockholders in the cor-
poration that donated the lot on which to build the
courthouse does not affect the validity of the election or
the order of removal.—*Jeffersonian Pub. Co. v. Hillard*,
105 Ala. 578.    The notice of the election was sufficient.
—*Ex rel. Adsit v. State*, 11 L. R. A. 534; *Dishon v*

*Smith,* 10. Ia. 212; 15 Cyc. 320; *People v. Hartwell,* 12 Mich. 523; *Patton v. Watkins,* 131 Ala. 278; *State v. Carroll,* 17 R. I. 591. The presumption is that the notice was given.—*Paul v. Malone,* 87 Ala. 544; *Dunklin v. Wilson,* 64 Ala. 162; 76 Ala. 453. There is no merit in the contention that after the election Chatom became the county seat and that all orders made at any other place were void.—1 Ency. P. & P. 239-245; *State v. Judge,* 44 La. Ann. 125; *In re Allison,* 10 L. R. A. 790.

CHARLES L. BROMBERG, and WILSON & MARTIN, for appellee.—Notwithstanding the decisions of this court in the case of *Walker v. City Council,* 139 Ala. 468, and *Brown v. Porter,* 40 South. 144, we entertain the opinion that the statute under consideration was unconstitutionally passed.—*Sadler v. Langhan,* 34 Ala. 335. The questions here presented were not presented and discussed on the other appeal. Chatom was not a village within contemplation of the statute.—*Town of Holland v. Lammers,* 89 N. W. 501. Publication was not given as required by the statute.—*People ex rel. Darnell v. Hamilton County,* 3 Neb. 244; *Williams v. Town of Roberts,* 88 Ill. 11; *State ex rel. Webber v. Tucker,* 32 Mo. App. 620; *Athens v. Hemeric,* 89 Ga. 647; *Haddock v. County Commissioners,* 79 Va. 677, 32 Mo. App. 633; 79 Ga. 709; 36 Ind. 320; 102 Cal. 184; 65 Ill. 90; 16 Kan. 72. Prohibition was the proper remedy.—*Ex parte Hill,* 40 Ala. 121; *Ex parte Branch,* 67 Ala. 284.

TYSON, C. J.—This is an appeal, under section 431 of the Code of 1896, from an order made by Hon. Samuel B. Browne, as judge of the Thirteenth judicial circuit, granting a rule nisi upon a petition praying for a writ of prohibition against the court of county commission-

ers of Washington county, seeking to prohibit certain
acts and doings with respect to the erection of a court-
house and jail at Chatom, in said county, to which the
county seat had been removed by election held under the
act of the General Assembly approved March 3, 1903.—
Gen. Acts 1903, p. 117. In pursuance of the act last
cited a majority of the qualified voters of the county
petitioned the Governor in writing, praying that an elec-
tion be held in said county for the purpose of determin-
ing whether the county seat should be removed from the
town or village of St. Stephens, where then located, to
the town of Chatom, in said county. Upon the presenta-
tion of this petition the Governor, within the time re-
quired, as he was authorized to do, appointed three com-
missioners, known as the "Board of Commissioners of
County Seat Election," who undertook to and did per-
form the duties imposed upon and required of them by
the act. The election was held on the 28th day of Jan-
uary, 1907, at which 668 votes were cast. Of this num-
ber 467 were cast for removal to Chatom, 200 against
removal, and 1 for removal to Vinegar Bend. The re-
sult was properly certified by the board, as required, a
copy of which was filed and recorded in the office of the
judge of probate, and another copy published in a news-
paper in the county  It then became the duty of the
court of county commissioners, under the act, to procure,
by donation, or purchase at the expense of the county,
suitable lots or parcels of land in the town or village of
Chatom, and to cause to be erected, at the expense of the
county, a suitable courthouse and jail on said lots for
the county, "and pending the erection and completion
of the courthouse, to provide, at the new county seat,
suitable buildings for the use of the county officers hav-
ing offices in the courthouse, and such officers shall re-

move their offices and records thereof to such temporary offices as soon as practicable; and when said courthouse shall be completed and ready for occupancy, the said county officers shall remove their offices and the records thereof to such offices or rooms in the new courthouse as may be designated for them, respectively, by the county commissioners; and the sheriff, upon the completion of the jail, shall remove and keep therein any prisoners in his custody. After such removal all courts of record for the county shall be held in the new county seat and if need be the court of county commissioners must provide suitable buildings in which to hold said courts, pending the erection and completion of the courthouse."

The constitutionality of this act is challenged upon two grounds: (1) That the journal of the House does not show a compliance with section 62, art. 4, of the Constitution of 1901, which provides that "no bill shall become a law until it shall have been referred to a standing committee of each house, acted upon by such committee in session, and returned therefrom, which fact shall affirmatively appear upon the journal of each house." The journal entries of the House are in the same language as the one attacked in *Walker v. City Council of Montgomery*, 139 Ala. 468, 479, 36 South. 23, as being unconstitutional upon the ground here urged. After an exhaustive and thorough consideration of the question, we held that the entries affirmatively showed a compliance with the provision of the Constitution, and that there was no merit in the point. We are entirely satisfied with this holding, and must decline to depart from it. The remaining ground of attack upon the act —that it is unconstitutional on account of a violation of section 64 of the Constitution—was raised and decided

in the case of *State of Alabama ex rel. Brown v. Porter*,
145 Ala. 541, 40 South. 144, adversely to the contention
here made. We adhere to that decision.

The next point raised seems to be that the election
was void for the reason that Chatom was not a town or
village within the meaning of the act of March, 1903. It
is contended that the act by its very terms limits the
places to which a county seat may be removed, namely,
a city, town, or village, and, furthermore, that, while it
does not define what is meant by "village," it contem-
plates only such a village as has defined boundaries. It
is shown by the petition that Chatom is not incorpora-
ted, but that, at the time the petition for election was
presented to the Governor, there were at that place a
post office, a store, one residence, and a sawmill, and
another building in process of construction. There was
also a doctor's residence about a quarter of a mile away.
It was also shown that, after the petition was acted on
by the Governor and before the election was held, a rail-
road station house and a wood rack, for supplying wood
to the railroad locomotives, were erected at this place;
that some of the vacant land in and around this place,
before the petition was presented, had been platted by
its owner into lots or parcels; that prior to the election
other persons platted their lands into lots or parcels;
and that the site for the courthouse was located upon
one of these lots, some 600 feet from the post office,
which, it is averred, lies "outside of any improvements,
buildings, or signs of habitation at or around the post
office at Chatom." Webster's International Dictionary
defines village as "a small assemblage of houses in the
country, less than a town or city." Indeed, this is the
common acceptance of the meaning of the word, and, in
the absence of something in the context of the statute to

indicate that a different meaning was intended, this one should be adopted. Adopting it, as we should do, we are of the opinion that the facts show that Chatom was, at the time the petition was presented to the Governor, and at the date of the election, a village within the purview of the act. We have many villages and towns that are not incorporated; nor is incorporation necessary to constitute an "essemblage of houses in the country"— a village. There are a number of counties in this state which have not within their borders an incorporated village or town, and it must be presumed that the Legislature knew this when it enacted the statute. There is absolutely no merit in the point that the lot selected is 600 feet from the post office, and therefore not within the limits of the village. The boundary lines of a village, not incorporated, are necessarily undefined. The Legislature did not undertake to designate with particularity the spot upon which the courthouse or the jail should be located, but committed that matter to the sound discretion of the court of county commissioners; and, if they locate the courthouse and jail at or near the village, this would be all that is required. The manifest purpose of the act, in using the words "city, town, or village," as designating the places to which the removal might be made, was simply to enable the voters, who were to decide the question of removal, to intelligently understand to what locality the county seat was to be removed. Every voter is presumed to know the name of the city, town, or village in his county; and doubtless this presumption was indulged by the Legislature when the act was passed. This is obvious from the form of the order prescribed for the holding of the election, as well as from the prescribed form of the ballot.

The fact that two of the county commissioners were stockholders in the company that donated the lot to the county upon which the courthouse is to be built can have no possible effect upon the validity of the removal of the county seat.—*Jeffersonian Publishing Co. v. Hilliard,* 15 Ala. 576,. 17 South. 112.

The failure of the board to furnish the inspectors holding the election a certified list of the registered voters in each precinct of the county, or the failure of those voting at said election to produce their certificates of registration, and to produce the receipts of the tax collector showing the payment of poll taxes, etc:, in the absence of a showing that illegal ballots were received, which affected the result, were mere irregularities, and did not render the election void. If illegal votes were cast and counted, and the result was thereby affected, this would be ground for rejecting them, and, it may be, for setting aside the election; but it will not be presumed that the illegal ballots were cast.—10 Am. & Eng. Ency. Law, 696.

The next proposition we will dispose of is the one assailing, for want of jurisdiction, the validity of the orders of the court of county commissioners, made in pursuance of the mandate of the act, for the purpose of effecting the construction and completion of the courthouse and jail at Chatom. It appears that the court convened on the 14th day of January, 1907, which was a day for the convening of the regular January term, 1907, of the court, and that by orders entered upon the minutes the court prolonged the term until the next regular term in April. This the court unquestionably had a right to do; and, as the sittings were during a regular term, there was no necessity for the giving of any notice. as is required for a special term.—Section 956, Code

1896. But it is said these sittings of the court should have been at Chatom, and not at St. Stephens; and this is predicated upon the wording of section 17 (page 124) of the act of March, 1903, which is in this language: "If upon a canvass of the returns of said election, it shall be ascertained and declared that a majority of all the legal votes cast were in favor of the removal of the county seat, then the city, town or village thus selected shall thereafter be the county seat of the county." It is nowhere in this act prescribed where the court of county commissioners shall sit, for the purpose of making the necessary orders looking to the procuring of a suitable lot, or for making provision for temporary buildings to be occupied pending the erection and completion of the courthouse, or for negotiating for the construction of the courthouse and the jail. Nor, in our opinion, did the Legislature intend that the court should sit at Chatom until, at least, some house had been provided for the safe-keeping of its records. And obviously, in order to make provision for temporary buildings, etc., this court must sit somewhere and make the necessary orders, which must be entered upon its records; and of necessity this would have to be done at St. Stephens. It may sit at that place for this purpose, it may do so for the purpose of discharging its other duties with respect to locating the site for the courthouse and the jail, and for making a contract for their erection and comple- tion. Furthermore, we have been unable to find any statute which requires this court to hold its sittings at the county seat; and clearly, in the absence of a statute regulating the sittings, the orders of the court made anywhere in the county would be valid.

Section 4 (page 119) of the act provides that notice of the order for the holding of the election shall be given

by publishing a copy thereof for 4 consecutive weeks, such publication to begin within 15 days after the making of the order. The date of the order was November 28, 1906. The petition shows that the required notice was published in the Washington County News, in the issues of December 6th and 13th, but was omitted from the issues of December 20th and 27th. January 28, 1907, was the date fixed for the election, and it was held on that day. It is not shown, nor is it denied, that the notice appeared in the papers of January 3d, 10th, 17th, and 24th. It must therefore be presumed that it did so appear, upon the idea that the board discharged the duty required of it. Indulging this presumption, which we have a right to do, it must be held that there was a substantial compliance with the directions of the statute. But, even if this be not true, and the publication appeared only in the issues of the paper of December 6th and 13th, the omission to give further notice would not invalidate the election, in the absence of a showing that the want of full notice, by publication, deprived some portion of the electors of their right to vote, which would have changed or rendered doubtful the result. In other words, an election would not be vacated and held for naught because the law requiring the giving of notice has not been strictly followed, if such notice was given as that the great body of the electors were in fact informed of the time and purpose of the election.—Mc-Crary on Elections, §§ 176, 177, 178, 179, and 181, and notes; 15 Cyc. pp. 321, 322, and cases in notes.

Whether the court of county commissioners was with or without authority to make the order authorizing the judge of probate to borrow $5,000 to meet the demands against the county, or the order transferring from the fine and forfeiture fund $1,500 to the general fund of the

county, is clearly not a ground for a writ of prohibition. If the court was without such authority, the exercise of it could not possibly affect the removal of the county seat. Indeed, all the acts of this court here sought to be prohibited are executive or administrative, as contra-distinguished from judicial.—*Commissioners' Court v. Moore,* 53 Ala. 25; *Jeffersonian Publishing Co. v. Hilliard, supra.* The action which may be restrained by the writ of prohibition must be judicial or quasi judicial. The writ will not lie to prevent acts legislative, ministerial, administrative, or executive in character, although performed by the judge or presiding officer of an inferior tribunal.—*State ex rel. Turner v. Bradley,* 134 Ala. 549, 33 South. 339; High's Extra. Legal Remedies, § 769; 16 Ency. Pl. & Pr. p. 1106; 23 Am. & Eng. Ency. Law (2d Ed.) pp. 203, 204.

Notwithstanding this proceeding is not the proper remedy to right the grievances, if any existed, yet, owing to the fact that the matter in controversy is of vital importance to the public welfare of the county, we have decided every question of substantive law attempted to be raised. Our conclusion is that there is no merit in any of the contentions alleged, and that the rule nisi should be discharged, and the petition dismissed. It will be so ordered.

Petition dismissed.

HARALSON, SIMPSON, and DENSON, JJ., concur.