(112 So. 894)

No. 28541.

**STATE ex rel. O'KEEFE, Mayor, v. BOARD OF LIQUIDATION, CITY DEBT.**

April 5, 1927.

*(Syllabus by Editorial Staff.)*

1. Municipal corporations ⬯918(3)—Notice of bond election, published in official journal by police chief under mayor's instructions, held "official notice" (Act No. 51 of 1920 amending Act No. 4 of 1916, § 4 [see Laws Ex. Sess. 1917], reaffirmed by Const. 1921, art. 14, § 24).

Notice of election published in official journal by chief of police under instructions of mayor, giving complete statement of object and purpose of election to approve city bond issue, was an "official notice" required by Act No. 51 of 1920, amending Act No. 4 of 1916, § 4 (see Laws Ex. Sess. 1917), reaffirmed by Const. 1921, art. 14, § 24.

2. Municipal corporations ⬯918(3) — Omission of fourth publication of notice of bond election held supplied by police chief's notice or mayor's proclamation during fourth week (Act No. 51 of 1920, amending Act No. 4 of 1916, § 4 [see Laws Ex. Sess. 1917], reaffirmed by Const. 1921, art. 14, § 24).

Where notice of election to authorize bond issue by city, required to be published for thirty days in four weekly insertions under Act No. 51 of 1920, amending Act No. 4 of 1916, § 4 (see Laws Ex. Sess. 1917), reaffirmed by Const. 1921, art. 14, § 24, was published for three successive weeks, omission to publish same notice in fourth week was supplied by publication of notice of election during fourth week by chief of police under instructions of mayor or by publication of mayor's proclamation, stating purpose of election.

3. Municipal corporations ⬯918(3)—Notice of bond election must state date and purpose of election, but need not all be in same form (Act No. 51 of 1920, amending Act No. 4 of 1916, § 4 [see Laws Ex. Sess. 1917], reaffirmed by Const. 1921, art. 14, § 24).

Under Act No. 51 of 1920, amending Act No. 4 of 1916, § 4 (see Laws Ex. Sess. 1917), reaffirmed by Const. 1921, art. 14, § 24, notice of election to authorize city bond issue must inform public of date and purpose of election and state in detail proposition submitted, but it is not required that all four publications be of the same form of notice.

4. Municipal corporations ⬯918(3)—Change in form of notice of bond election, not affecting substance held not to authorize annulment of election (Act No. 51 of 1920, amending Act No. 4 of 1916, § 4 [see Laws Ex. Sess. 1917], reaffirmed by Const. 1921, art. 14, § 24).

Where notice of election required by Act No. 51 of 1920, amending Act No. 4 of 1916, § 4 (see Laws Ex. Sess. 1917), reaffirmed by Const. 1921, art. 14, § 24, to authorize city bond issue, was published for three weeks over signature of mayor and attested by clerk, change in form of notice on last publication to notice by chief of police, under instructions by mayor or to proclamation by mayor stating purpose of election, did not affect purport of notice or deceive public, and court was unauthorized to annul election merely because of change.

5. Municipal corporations ⬯918(3)—Weekly publications of notice of bond election need not be published seven days apart but only during succeeding weeks (Act No. 51 of 1920, amending Act No. 4 of 1916, § 4 [see Laws Ex. Sess. 1917], reaffirmed by Const. 1921, art. 14, § 24).

Under Act No. 51 of 1920, amending Act No. 4 of 1916, § 4 (see Laws Ex Sess. 1917), reaffirmed by Const. 1921, art. 14, § 24, requiring notice of election to authorize bond issue to be published for thirty days in four weekly insertions, weekly publications need not be seven days apart and need not be in different calendar week ending Saturday night; it being sufficient if final notice was published in week succeeding publication of previous notice.

6. Municipal corporations ⬯918(3)—Where third weekly notice of bond election was published during week commencing November 12th, final notice published November 26th was timely (Act No. 51 of 1920, amending Act No. 4 of 1916, § 4 [see Laws Ex. Sess. 1917], reaffirmed by Const. 1921, art. 14, § 24).

Under Act No. 51 of 1920, amending Act No. 4, of 1916, § 4 (see Laws Ex. Sess. 1917), reaffirmed by Const. 1921, art. 14, § 24, requiring notice of election to authorize city bond issue to be published for thirty days in four weekly insertions, where third weekly notice was published during week commencing November 12th, final notice by mayor's proclamation made on November 26th was properly made during the week succeeding termination of week of third notice.

**7. Municipal corporations ⊜918(3)—Bond issue, widely advertised and approved by majority, held valid though. form of final election notice was changed (Act No. 51 of 1920, amending Act No. 4 of 1916, § 4 [see Laws Ex. Sess. 1917], reaffirmed by Const. 1921, art. 14, § 24).**

Where there was no neglect or omission of any specific requirement of Act No. 51 of 1921, amending Act No. 4 of 1916, § 4 (see Laws Ex. Sess. 1917), reaffirmed by Const. 1921, art. 14, § 24, regarding publication of election notices to authorize city bond issue, except irregularity in substituting different form of notice for final weekly publication which did not deprive any one of right to vote, bond issue, widely advertised and approved by large majority, was valid.

Appeal from Civil District Court, Parish of Orleans; Porter Parker, Judge.

Mandamus by the State, on the relation of Arthur J. O'Keefe, Mayor of the City of New Orleans, to compel the Board of Liquidation, City Debt, to issue and sell bonds of the City. Judgment for plaintiff, and defendant appeals. Affirmed.

H. Generes Dufour, of New Orleans, for appellant.

Bertrand I. Cahn, City Atty., of New Orleans, for appellee.

O'NIELL, C. J. The defendant, board of liquidation, city debt, has appealed from a judgment making a writ of mandamus peremptory and ordering the board to issue and sell $7,500,000 of serial gold bonds of the city of New Orleans, as authorized by a vote of the property taxpayers at a special election held on the 30th of November, 1926. The board of liquidation, city debt, whose duty it is to issue and sell such bonds of the city, contends that the notice of the election was not published for thirty days in the official journal, and that the election was therefore invalid. The fourth section of Act No. 4 of 1916 (see Laws Ex. Sess. 1917), which act, as amended by Act 51 of 1920, was adopted and reaffirmed by the twenty-fourth section

of article 14 of the Constitution of 1921, provides:

"Due notice of said election shall be published for thirty days in the official journal of said city (four weekly insertions of said notice constituting a publication for thirty days, provided thirty days intervene between the date of the first insertion and the date of said election)."

[1] The notice in this instance was published over the signature of the mayor, attested by the clerk of the commission council, in the official journal on Saturday the 30th of October and on the 6th and 13th of November, 1926; but, by some unaccountable oversight in the newspaper establishment, over which the municipal authorities had no control, the notice was not published in the official journal on the 20th of November, or in any issue of the official journal subsequent to the 13th of November, 1926. Meanwhile, however, the mayor, being charged by the municipal ordinance with the duty of giving all necessary notices of the election, directed the chief of police to issue and publish an official notice, so as to give public notice of the location of the polling booths, and the chief of police did publish the notice, as directed by the mayor, in the official journal on Saturday the 20th, and on Monday the 22d and Monday the 29th of November, 1926. That notice gave a complete statement of the object and purpose of the election, as well as the location of the polling booth in each and every voting precinct in the city. The notice given by the chief of police, under instruction of the mayor, therefore, was an official notice and gave to the public the same information which the mayor's official notice had given, and the additional information as to the location of the polling booths.

There was also published in the official journal on Friday the 26th of November, 1926, a proclamation of the mayor, acting under instruction from the commission council, naming the commissioners of election to

serve at each of the voting precincts throughout the city, which proclamation also stated the purpose of the election and conveyed all of the information required by the statute, as far as that one publication could convey the information.

[2] It appears, therefore, that an official notice of the election was published in the official journal on Saturday the 30th of October, 1926, being 31 days before the date of the election, and on Saturday the 6th and Saturday the 13th of November; and that another official notice (by the chief of police) was published in the official journal on Saturday the 20th and on Monday the 22d and Monday the 29th of November; and that still another official notice (the mayor's proclamation naming the commissioners) was published in the official journal on Friday the 26th of November, 1926. The only irregularity in the matter of publishing the notices was that there were not four weekly publications—or four publications at all—of one or the same notice. The first publication, which was intended to be the official publication required by the statute, and which was published on the 30th of October and on the 6th and 13th of November, should have been published again on the 20th of November, 1926. Our opinion, however, is that the omission was supplied by the publication of the notice by the chief of police on the 20th of November, under instructions from the mayor; and, if the omission had not been supplied in that way, it would have been supplied by the publication of the mayor's proclamation on the 26th of November, 1926.

[3, 4] The statute, of course, requires that the notice shall be such as to inform the public of the date and purpose of the election, and state in detail the proposition to be submitted to the taxpayers for their approval or rejection; but the statute does not say what officer shall sign the notice or prescribe the form of notice. In Henderson v. City of Shreveport, 137 La. 667, 69 So. 88, 5 A. L. R. 516, it was said "that the only notice of the election was the mayor's proclamation" appearing in four weekly publications of the official journal, and it was held or conceded that that form of notice was sufficient. The statute, of course, intends that one and the same form of notice shall be given in each of the four weekly publications, but the statute does not, in terms, require that the four publications shall all be of the same form of notice. Where, as in this case, the change in the form of notice did not affect its purport and could not possibly have deceived any one or withheld from any one the information which was required to be published, the court has no authority to annul the election merely because of the change or difference in the form of the notices that were published.

[5, 6] It is contended on behalf of the appellant that, even if the mayor's proclamation, published on the 26th of November, 1926, should be deemed a sufficient substitute for and the equivalent of the official notice which was published on the 30th of October and on the 6th and 13th of November, and which should have been published again on the 20th of November, nevertheless the mayor's proclamation was not published during the next week after the week of the 13th of November. The statute does not require that the four weekly publications shall be exactly seven days apart, nor does it, in terms, require that each publication shall be in a different calendar week ending Saturday night. In the sense that a week means seven consecutive days, the mayor's proclamation, published on the 26th of November, was published in the week succeeding that in which the official publication appeared for the last time, which was on the 13th of November. That publication was in a week which commenced at midnight on Friday night, the 12th of November and ended at midnight on

Friday night, the 19th of November. The publication of the mayor's proclamation, on Friday, the 26th of November, was in the week which commenced at midnight on Friday night, the 19th of November and ended at midnight on Friday the 26th of November. The statute does not forbid a lapse of more than seven days between any two of the four so-called weekly publications. On the contrary, by requiring only four weekly publications and requiring that thirty days shall intervene between the date of the first publication and the date of the election, the statute allows a lapse of more than seven days either between two of the publications or between the date of the last publication and the date of the election, because, if the four publications are exactly a week apart, there are only twenty-one days from the first to the fourth publication, whereas there must be at least thirty days intervening between the first publication and the date of the election.

In the case entitled In re City of New Orleans, Praying to be Put in Possession, 52 La. Ann. 1073, 27 So. 592, where notice of a public sale was required to be published weekly for thirty days before the date of sale, and where the notice was published on Tuesday, the 17th, 24th, and 31st of December and 7th of January, and was not published again until Saturday, the 18th of January, it was held that the publications on the 7th and 18th of January were in consecutive weeks. The ruling was affirmed in Hansen v. Civil Sheriff, 52 La. Ann. 1567, 28 So. 167, where, as in the previous decision, the court quoted from Ronkendorff v. Taylor's Lessee, 4 Pet. 361, 7 L. Ed. 886, where the Supreme Court of the United States, interpreting an act of Congress requiring notice of a tax sale to be published "once a week" for three months, said:

"In examining the dates of the publications, it appears that eleven days at one time transpired between them, and at another time ten days, at another eight.

"These omissions, it is contended, are fatal; that the publication being once made, it was essential to the validity of the notice that it should be published every seventh day thereafter.

"The words of the law are 'once a week.' Does this limit the publication to a particular day of the week? If the notice be published on Monday, is it fatal to omit the publication until the Tuesday week succeeding? The object of the notice is as well answered by such a publication, as if it had been made on the following Monday.

"A week is a definite period of time, commencing on Sunday and ending on Saturday. By this construction the notice in this case must be held sufficient. It was published Monday, January the 6th, and omitted until Saturday, January the 18th, leaving an interval of eleven days; still the publication on Saturday was within the week succeeding the notice of the sixth.

"It would be a most rigid construction of the act of Congress, justified neither by its spirit nor its language, to say that this notice must be published on any particular day of a week. If published once a week, for three months, the law is complied with, and its object effectuated."

In other jurisdictions the rule is that a special election should not be annulled because of an irregularity or omission in the publication of the notice required by the statute on the subject, unless there is some probability that a strict compliance with the requirement of the law for giving notice might have brought about a different result of the election. See Rands v. Clarke County et al., 79 Wash. 152, 139 P. 1090; Town of Grove v. Haskell, 24 Okl. 707, 104 P. 56; City of Ardmore v. State ex rel. Best, 24 Okl. 862, 104 P. 913; Billington v. Moore, Judge, 168 Ky. 22, 181 S. W. 651; Wheat v. Smith, 50 Ark. 266, 7 S. W. 161; Hicks v. Krigbaum, 13 Ariz. 237, 108 P. 482; Commissioners of Washington County v. State ex rel. Bowling, 151 Ala. 561, 44 So. 465; McCrary on Elections (4th Ed.) p. 433, §§ 176 to 181; 15 Cyc. 321, 322.

[7] In this case there was no neglect or

omission of any specific requirement of the law in regard to the publication of the election notice. It was somewhat informal and irregular to substitute for the official notice which was published on the 30th of October and on the 6th and 13th of November, and which should have been published again on the 20th of November, the notice published by the chief of police under direction of the mayor, or to substitute the mayor's proclamation on the 26th of November; but the irregularity was not a violation of any specific provision of the law, and the proof shows that it is not only improbable but in fact impossible that any one qualified to vote in the election was deprived of his right to vote by the irregularity or informality in the publication of the official notice of the election. The official notice published in the official journal on the 30th of October and on the 6th and 13th of November was also ·published in two other New Orleans daily newspapers having vast and general circulation, not only in the issues of October 30th and November 6th and 13th, but also in the issues of November 20th—the date on which the publication should have been made also in the official journal. During the thirty days before the election, and beginning several months before the election, such an intense and exciting campaign in support of the proposition to issue the $7,500,000 of bonds was carried on that no one qualified to vote in the election— no man or woman of ordinary intelligence in New Orleans—could possibly have been unaware of the date or purpose of the election. There were public speakings almost every night in favor of the proposed bond issue; in all the motion picture theaters, slides were thrown upon the screen every night, explaining and advocating the proposed bond issue; clergymen explained and advocated the proposition from the pulpit every Sunday; commercial, fraternal, labor, and social organizations adopted and published resolutions on the subject; all of the banks and homestead associations issued circulars, and the retail merchants wrapped up handbills in the packages delivered to their customers, advocating the proposed bond issue; large billboards at the railroad entrances to the city and at other conspicuous places, and electric signs on Canal street and in other commercial districts in the city, proclaimed the date and purpose of the election; automobile parades, with brass bands playing and banners flying, trailed clouds of glory on the subject; and the four daily newspapers in the city told all about it every day in their editorials and scarehead news articles. The majority of votes in favor of the proposition was nearly seven to one, and the majority in assessed valuation was nearly ten to one. The publication of the official notice of the election, in the official journal, was a matter of no 'importance, except that the statute required it. The requirement of the statute was complied with. The irregularity in the publication of the notices did not violate or neglect any specific provision of the law. Our conclusion, therefore, is that the proposed bond issue is valid.

The judgment is affirmed.