.[State, ex rel. Sigsbee v. City of Birmingham, et al.]

# State, ex rel Sigsbee v. City of Birmingham, et al.

## Quo Warranto.

(Decided Dec. 17, 1908. Rehearing denied Feb. 5, 1909.
48 South. 843.)

1. *Quo Warranto; Grounds; Exercise of Corporate Franchise.*— Where territory was annexed to a city by virtue of an election and the city has designated such territory as a ward, has sworn in councilmen, and has assumed to exercise sanitary and police authority over the territory, claiming the same as a part of the city, quo warranto will lie to test the validity of such an election . (Section 5453, Code 1907.)

2. *Statutes; Local Laws; Constitutional Provision.*—Local laws 1907, p. 902, is not in violation of paragraphs 29, section 104, Constitution 1901, when that section is considered in connection with paragraph 18, thereof.

3. *Municipal Corporations; Annexation of Territory; Elections; Statutes.*—Construing together section 1070-1074, and 1125, Code 1907, an election held under section 1073 to annex territory to a city, and held within six months after an election for the annexation of such and other territory under Local Acts 1907, p. 902, is invalid; the word, similar, meaning with more or less resemblance, and not, precisely alike.

4. *Appeal and Error; Review on Rehearing; Matters Presented on the Trial.*—Constitutional questions not considered in the trial court and not presented in argument of the cause in this court, will not be considered by this court on an application for rehearing.

APPEAL from Jefferson Circuit Court.

Heard before Hon. A. O. LANE.

Quo warranto by the state on the relation of J. N. Sigsby and others against the city of Birmingham, and others, to test the validity of an election held for the purpose of annexing territory to said city. From a judgment sustaining demurrer to the petition and dismissing it, relators appeal. Reversed and remanded.

PINKNEY SCOTT, for appellant.—Counsel discuss assignments of error but without citation of authority.

[State, ex rel. Sigsbee v. City of Birmingham, et al.]

R. H. THATCH, for appellee.—Where there is only a threatened exercise of a franchise the proceedings instituted here will not lie.—*State ex rel. Johnson v. Ensley,* 142 Ala. 665.

SIMPSON, J.—This is a quo warranto proceeding, instituted by the appellants to test the validity of certain elections by which certain territory, described in the petition, was annexed, or intended to be annexed, to the city of Birmingham. On the 8th day of August, 1907, the act of the legislature was approved, being "An act to alter or rearrange the boundary lines of the city of Birmingham, Alabama." Said act provided for altering and rearranging the boundary lines of said city, by adding thereto the territory described in the petition, but by section 3 thereof provided for an election to be held to determine whether said act should go into effect, and that, if a majority of the qualified voters participating in said election should vote in favor of "Greater Birmingham," "said act shall become in full force and effect on the 1st day of October, 1909," but, if a majority be against the proposition, "then this act shall be null and void ." Loc. Acts 1907, p. 902. Under and by virtue of said act an election was held on January 6, 1908, and the returns were duly made, though the record does not show what the result of said election was. The city council of said city then passed a resolution (purporting to be under section 1071, Code of 1907) requesting the probate judge to call an election for the purpose of annexing a part of the same territory to the said city, and the election was accordingly held June 30, 1908, resulting in a vote in favor of said annexation. Under the act of August 8, 1907, as will be seen, if that election of January 6, 1908, resulted favorably, the act was not to go into effect until October 1, 1909, so that, whether that election was

lost or carried, the result will be the same as to this case. Demurrers were sustained, and the circuit court dismissed the petition for a writ of quo warranto, and the relators appealed.

The appellees insist that said action of the court was without error, because, first, quo warranto is not the proper proceeding, as it appears that the exercise of the franchise was only threatened (as was the case in the cause of *State ex rel. Johnson v. Mayor and City Council of Ensley,* 142 Ala. 665, 38 South. 802) ; but the petition, as amended, alleges that said city has annexed the territory described, has designated it as "ward 11," "has sworn in councilmen from said ward, and assumed to exercise sanitary and police authority over said territory, and in every respect claims the said part of said territory a part of the municipal city of the city of Birmingham, and is exercising municipal functions and privileges, through its mayor, police officers, sanitary officers, and others intrusted with such duties for said city." This shows actual exercise, and not a mere threat to exercise, the franchise of governing said territory. Quo warranto is the proper remedy in this case. Section 5453, Code of 1907; *City of Uniontown v. State ex. rel. Glass,* 145 Ala. 471, 39 South. 814.

It is next insisted that section 3 of the act of August 8, 1907, is void, as being in contravention of paragraph 29 of section 104 of the Constitution of 1901. Said section prohibits local legislation in regard to a number of subjects; said paragraph 29 being as follows: "Providing for the conduct of elections or designating places of voting, or changing the boundaries of wards, precincts or districts, except in the event of the organization of new counties, or the changing of the lines of old counties." This paragraph evidently refers to making changes in regard to elections, and changing the bounda-

ries of wards already in the municipality, and does not touch the subject of changing the boundaries of the municipality itself by adding new territory to it. This is made very clear by paragraph 18 of the same section, which, after prohibiting the "amending, confirming or extending the charter of any private or municipal corporation, or remitting the forfeiture thereof," adds these words: "Provided, this shall not prohibit the legislature from altering or rearranging the boundaries of the city, town or village." Section 3 of the act of August 8, 1907, is not violative of section 104 of the Constitution; and as said act provides for only one election, and the election of January 6, 1908, having been held thereunder, and being valid, no other election could be called thereunder.

Article 3 of chapter 32 of the Code of 1907 (sections 1070-1074) provides for the extension of the limits of any town or city, and article 4 of the same chapter provides for extending the corporate limits of "any city having 25,000 inhabitants or more," in which class the city of Birmingham is (sections 1075-1125, Code of 1907). Section 1073 (being in said third article) provides that "after an election has been held in any territory, under the provisions of this article, or any other law, no other or subsequent election shall be ordered or held for the same territory or any part thereof within six months next after said election." Section 1125 (being in article 4) provides that "after an election has been held in any territory, under the provisions of this or any other similar law, no other or subsequent election shall be ordered or held for the same territory, or any part thereof, within six months next after said election." Whether the provisions of article 4 were intended to be the only law by which the limits of a city of 25,-000 or more inhabitants could be extended, or whether

to effect such end, article 3 might also be proceeded under, need not be decided, as the result would be the same in this case. If said city acted under article 3, then section 1073 is an absolute prohibition on any election within six months. If the election could be held to have taken place under the fourth article, then an election is equally prohibited within six months, provided the act of August 8, 1907, is a "similar law" to that contained in the Code.

The word "similar" is derived from the Latin word "similis," meaning "like," and while its meaning in some connections is "exactly corresponding," "precisely alike," yet it is frequently used to mean "nearly corresponding," "resembling in many particulars," "somewhat like," "having a general likeness." Webster's Internat. Dict. Worcester defines it as "like," "resembling," "having a resemblance." And the Century Dictionary defines it: "Having characteristics in common, like in form, appearance, size, qualities, relations, etc.; having a more or less marked resemblance; in some respects identical; bearing a resemblance." So, in arriving at its meaning in legislation, it is necessary to consider its connection, and the object intended to be accomplished by its use. In construing the tariff laws, holding that goods which were woven from threads already dyed were "of similar description" to goods which were woven in gray and afterwards printed, although they differed in several other particulars, the Supreme Court of the United States said: "The statute does not contemplate that goods classed under the words 'of similar description' shall be in all respects the same." —*Greenleaf v. Goodrich*, 101 U. S. 278, 283, 25 L. Ed. 845. Where a testator left bequests to certain charitable and educational institutions, it was said: "Similarity is not identity, but resemblance between different

things." The "Friends' School" and the "East Green-
wich Academy" were similar institutions to "Brown
University," though "the studies taught by them are
narrower in range and lower in grade, to some extent,
than those which are taught in Brown University," and
they differed in some other particulars. The court,
continuing, said: "It was apparently the purpose of the
testator to advance the higher education of the people,"
etc. In the same case it was held that a "Home for
Aged Women" and a "Home for the Aged of the Little
Sisters of the Poor" were similar institutions to a
"Home for Aged Men."—*Rhode Island Hospital Trust
Co. v. Olney et al.,* 16 R. I. 184, 13 Atl. 118.

The evident purpose of section 1125 of the Code of
1907 was to provide that, after the people had once
been called on to vote on the question of the annexation
of the additional territory to the municipality, they
should not be called to vote on substantially the same
proposition again within six months. In this case the
territory involved was included in both elections. The
electors are the same; for, while the act of August 8,
1907, provides that "all the qualified electors, residing
in the territory," may vote, and that the election shall
be held under the provisions of the general election laws
of the state, and section 1082 of the Code provides that
"each qualified voter, who has resided within the boun-
daries of the territory proposed to be brought into the
city for three months next preceding the election, may
vote," the Constitution requires that, in order to be a
qualified elector, the person shall have resided in the
precinct or ward three months. The provisions in ar-
ticle 4 of the Code, not found in the act of August 8,
1907, relate mainly to matters of detail, within the
powers of the governing body of the city at any rate.

However that may be, the limitation is peremptory, and it results that the election of January 6, 1908, is valid, and that that of June 30, 1908, is invalid; and as under the election of January 6, 1908, the law does not go into effect until October 1, 1909, the city of Birmingham is without authority to exercise its franchise over said territory now.

The judgment of the court is reversed, and the cause remanded.

TYSON, C. J., and ANDERSON and DENSON, JJ., concur.

### ON REHEARING.

PER CURIAM.—As the only constitutional question presented by the demurrer is whether the act of August 8, 1907, is violative of section 104, par. 29, of the Constitution, and that was the only question considered by the court below and in the argument of the case here, we cannot consider other constitutional questions suggested to us.