[State, ex rel. Knox v. Dillard, et al.]

# State, *ex rel.* Knox *v.* Dillard, *et al.*

### Quo Warranto.

(Decided April 21, 1916.   Rehearing denied May 25, 1916.
72 South. 56.)

1. **Quo Warranto; Burden of Proof.**—Where respondent admits holding and exercising the powers and duties of an office, the burden devolves on him of showing rightful authority for such holding, and the exercise of the powers thereof.

2. **Same; Information; Requisite.**—An information in quo warranto is sufficient if it avers in general terms, designating the particular office, that respondent usurps, intrudes into, and unlawfully holds the same.

3. **Same; Appeal; Statute.**—The statutory system of proceedings in quo warranto as provided by § 5450, et seq., Code 1907, contemplates an appeal by either party from the judgment.

4. **Same.**—Where demurrer is sustained to the petition in quo warranto, and a petitioner declines to plead further, a judgment dismissing the petition, and taxing petitioner with the costs is final.

5. **Statutes; Enactment; Report on Bill.**—As the reference of the bill embraced in Local Laws 1915, p. 98, to a standing committee of the senate, is not affirmatively shown by the journal of the senate, the bill never properly became a law, since it violates the provisions of § 62, Constitution 1901.

6. **Constitutional Law; Necessity of Decision.**—The constitutionality of a law will not be considered on appeal, unless essential to the decision of an actual case.

7. **Appeal and Error; Suggestions of Error.**—The appellate courts will not search for constitutional objections on a general suggestion of unconstitutionality.

8. **Same; Reservation Below.**—Where the determination by the appellate court of questions involving matters of public concern cannot be had without the consideration and decision, of the constitutionality of an enactment, when a specific objection to the constitutionality of the statute is pointed out, and the pertinent parts of the legislative journals are cited, the courts must decide such question, whether raised or argued or not, in the lower court.

(Mayfield and Gardner, JJ., dissent.)

APPEAL from Covington Circuit Court.

Heard before Hon. A. B. FOSTER.

Quo warranto by the State of Alabama on the relation of W. M. Knox and others, against Moses Dillard and others. From a judgment for respondent relators appeal. Reversed and remanded.

[State, ex rel. Knox v. Dillard, et al.]

POWELL, ALBRITTON & ALBRITTON, for appellant. A. WHALEY, and W. L. PARKS, for appellee.

MAYFIELD, J.—Appellant, as relator, filed a statutory complaint or information in the nature of quo warranto against appellees, as authorized by chapter 128, §§ 5450-5472, of the Code, alleging that appellees were usurpers of the offices of members of the court of county commissioners of Covington county, and that the relator, a member of the board of revenue of Covington county, was entitled to discharge the duties of the office alleged to be usurped by one or the other of the appellees. The trial court sustained a demurrer to appellant's amended complaint or information, and the appellant declined to plead further, and suffered judgment of dismissal, and from that judgment prosecutes this appeal.

It is conceded that the correctness or incorrectness of the rulings complained of depends upon the proper construction and the validity or invalidity of certain provisions or sections of a local statute passed by the Legislature of Alabama at the late (1915) session (Local Acts, 1915, pp. 98, 103). This act and the notice of its proposed passage as provided for by section 106 of the Constitution are set out in extenso as exhibits to the complaint or information. The act, as its title indicates, undertook to create a court of county commissioners for Covington county in lieu of a board of revenue for the same county, and to provide for officers to discharge the duties of the court so created, and for the qualifications of such officers, and for their election or selection. As the court created was in lieu of the board of revenue, which was abolished, and as the terms of the members of the board abolished had not expired, the act undertook to provide that the members of the board who should comply with certain provisions of the act should hold office as members of the court created until their successors were elected and qualified under the provisions of the act creating the court. Appellant was a member of the board of revenue, and qualified and held the office under the statute in question until appellees were elected and qualified as provided in the statute, when the latter assumed the duties of the office, and thereafter discharged the duties previously discharged by appellant.

It should be observed that neither appellant nor either of appellees professes to be entitled to hold office for the full term

fixed by the statute, but that each professes and claims to be entitled to hold office until the beginning of the first full term fixed in the statute, which is until their successors are elected and qualified at the general election to be held in 1916. In fact, the term to which the claim of office is made is the interim from a special election held 60 days after the passage of the act, to-wit, October 9, 1915, to the general election to be held in 1916, and until their successors are qualified. It is contended by the appellant that the act in question or part thereof is void, which provides that at the general election to be held in 1916 the members of the court or some of them shall be elected, not by the votes of the entire county, but by the votes of the respective districts into which the act in question divides the county. It is therefore apparent that a sufficient answer to this contention is that none of the parties claim any rights under this provision of the act, and that none can claim any such right until an election is held under this provision. If we were to decide this question, the case to this extent would be moot.

It is next insisted that the provision of the act which authorized a special election for the selection of the persons to fill out the unexpired terms until the general election in 1916, at which election the officers should be elected for full terms, was void, because such provision was not authorized by the notice of the intention to pass the bill, as is provided in section 106 of the Constitution. The provisions of the act which relate to the filling of the offices during the interim from the passage of the act until the general election in 1916 are as follows: "Sec. 17. The officers of the board of revenue for said county, who may be in office at the time this act goes into effect shall constitute such respective officers of this said court, if qualified under this act upon filing oath and bond as provided herein within ten days from the approval of this act as a condition precedent, and shall hold office, in such event, until their successors are elected and qualified as provided for in this act.

"Sec. 18. That on the first Saturday after the expiration of sixty days from the approval of this act, an election shall be held in Covington county, to be held and provided for in all respects and carried out as general elections, for the purpose of electing officers for said court, whose terms of office shall begin on the election and qualification under this act, and until their successors are elected and qualified at the general election in 1916; and

county officers for said county, shall perform the same duties, and in conformity to the law, as to such special election, its details and the results thereof, as is required under the general laws of this state as to elections."

The record shows that relator was one of the members of the board of revenue, and that he held office under section 17 of the act, from the passage of the act in question until the special election provided for under section 18 of the act, at which time the appellees were elected to fill out the remainder of the interim. Why two modes should thus be provided for selecting the persons to fill out the short interim of a little more than a year is a question of propriety addressed to the Legislature, and not to the court. It is a question of policy, and not of power or right. We are unable to see why such a provision was not authorized to be placed in the bill proposed to be passed, by the notice of intention, published as required by section 106 of the Constitution. The provisions are certainly germane and cognate to the main purpose of the proposed bill; and some such provision or provisions were necessary after the board of revenue was abolished, of course, because the act terminated the right of the incumbents, as members or officers of the abolished board, to hold the offices in question. The court of commissioners created by the act was in lieu of the board of revenue abolished, and all the powers and duties of the board were conferred on the court. The first regular term of office of the members and officers of the court created was not to begin until after the election to be held in the future—more than a year after the board was abolished—and it was not only proper, but necessary, for the Legislature to provide some mode for selecting the persons to fill the offices during the interim; and this they did by sections 17 and 18 of the act, above set out. The mode and manner of selecting these persons was peculiarly within the power and discretion of the Legislature. There is no constitutional prohibition or inhibition as to any particular mode. It could be done equally as well by the act naming certain persons to fill the offices ad interim, or authorizing the Governor or some other authority to appoint such, or providing for an election to select such persons. The Legislature in this case saw fit to adopt two of these methods, instead of one, for selecting the persons to fill out the terms of office during this interim, thus attempting the constitutional method prescribed for filling vacancies in certain judicial offices. Whether the

Legislature deemed the two modes necessary, to comply with these constitutional provisions, or whether some other reasons dictated the provisions, it is unnecessary for us to inquire, for the reason that the Legislature was well within the scope of its power in so framing the act.

If the statute were a general one, we apprehend no question would be raised as to the validity of such provisions; for like provisions are well within the powers of the Legislature in creating inferior and statutory courts, in abolishing the same, in filling the offices provided for such courts, in providing for the filling of vacancies to occur, or in providing that other officers shall be ex officio the officers of the courts so created. The authorities to this effect are too numerous to require citation. In fact, the Constitution contains provisions expressly authorizing the exercise of some of these powers, and the others are held not to be prohibited.

It is contended in this case, however, that the statute in question is a local one, and as such is prohibited, except after notice and publication thereof as required by section 106 of the Constitution. This section provides as follows: "No special, private, or local law shall be passed on any subject not enumerated in section 104 of this Constitution, except in reference to fixing the time of holding courts, unless notice of the intention to apply therefor shall have been published, without cost to the state, in the county or counties where the matter or thing to be affected may be situated, which notice shall state the substance of the proposed law and be published at least once a week for four consecutive weeks in some newspaper published in such county or counties, or if there is no newspaper published therein, then by posting the said notice for four consecutive weeks at five different places in the county or counties prior to the introduction of the bill; and proof by affidavit that said notice has been given shall be exhibited to each house of the Legislature, and said proof spread upon the journal. The courts shall pronounce void every special, private, or local law which the journals do not affirmatively show was passed in accordance with the provisions of this section."

The notice in this case was as follows: "A bill will be introduced in the Legislature of Alabama at its next regular session convening in January, 1915, and enacted into a law for Covington county, Ala., creating and establishing a court of record

for said county, styled the court of county commissioners, to be composed of one president, four associate members, and one clerk, to be elected by the qualified voters of said county at the general elections for 1916, and every four years thereafter, and whose terms of office shall be for the time and period as provided by section 1464 of the Code of Alabama, vesting said court, and the officers thereof respectively, with all the powers, duties, jurisdiction, practice, and procedure as is now or may hereafter be conferred upon courts of county commissioners and boards of revenue of this state, and also that of the board of revenue of Covington county, and transferring all the matters, causes, records, and papers of said board of revenue of Covington county into said court of county commissioners, and abolishing said board of revenue for said county, requiring bond of the officers of said court, and prescribing their qualifications and compensations, and to further extend and otherwise enlarge, define, and prescribe the powers, jurisdiction, and duties of said court and the officers thereof, and to constitute the members of the present board of revenue of said county the officers of said court until their successors are elected and qualified as provided for in said bill."

This notice we deem to be ample to authorize any provision in the act in question which is here complained of, and which can here be decided. It is probably the fullest and most specific of its kind which we have examined, and contains provisions possibly not necessary to support the act now under consideration. The provisions of the act are not different from or in conflict with any of the recitals contained in the notice. While the notice did recite that the members of the board of revenue, one of whom was appellant, should hold office with certain qualifications, it did not recite any specific term or time for which they should hold. It recited that they should hold only until their successors were elected and qualified, as provided for in the act proposed to be passed. The act did so provide, as well as how and when their successors should be elected; and they were so elected, and appellant served his full time as so provided, while appellees are now serving the remainder of the interim as is authorized by the act. It therefore appears that appellees are not usurpers, but are by law now authorized and designated as the persons to discharge the duties and exercise the franchises of the office in question, until after the general election to be held in November

of the current year, and until their successors are elected and qualified.

Counsel for appellant cite many cases and decisions of this court construing section 106 of the Constitution, and there are many more. All of these we have examined, but none of these cases hold that the provisions of the statute under consideration would be void on account of section 106, or of any other provision of the Constitution; and there has been placed by the court no construction on the Constitution which would have the effect of rendering these provisions of the statute void. It is useless to cite or review all the cases, because each decision is, of course, referable to the particular facts of the particular case; and in all the cases in which the act was declared void the provisions of the statute or the recitals of the notice or the publication thereof was entirely different from the case made on this appeal. What was said in the case of *Christian v. State*, 171 Ala. 52, 54, 54 South. 1001, as to the validity of another local act passed for the same county (Covington), as to the petition of another court of such county, and as to filling vacancies in the offices of such court, is both apt and conclusive in this case. It is there said: "The Constitution does not proceed upon the theory that all the details of every proposed law should be worked out in advance and without the aid of legislative wisdom. It requires only that the local public shall be advised of the substance of the proposed law, of its characteristic and essential provisions, and of its most important features. And this court has so held in a number of cases. Its language has been that the Constitution is complied with if the notice contain a fair compendium or abstract of the act in all its essential features. It has been said that the Constitution does not interfere with the right of the Legislature to shape up and work out the details of local legislation.—*State v. Williams*, 143 Ala. 501, 39 South. 276; *Hanna v. Tunstall*, 145 Ala. 477, 40 South. 135."

In the case of *State, ex rel. Hanna v. Tunstall*, 145 Ala. 477, 40 South. 135, presenting a similar question of conflict between the provisions of a statute and the terms of the notice anticipating it, as to the mode of selecting the officers and filling the places during the interim, it is said: "Under the law as it stood, there was a solicitor of the city court of Anniston, elected by the Legislature, whose term would not expire until February 25, 1905. Notice was given that application would be made to the

[State, ex rel. Knox v. Dillard, et al.]

Legislature to amend that law in the following particulars: (1) So as to provide that this solicitor, at the expiration of the term, should be 'appointed by the governor or elected by the people.' This was a notice to the people that the Legislature was to be asked to decide as to these two methods. No one could be deceived by it, and, if any one had any preference as to whether either one or the other of these methods should be adopted, they should have made known their wishes to their representatives or to the Legislature. The Legislature adopted the elective plan, but, as the time for the regular election had passed, provided for an appointment to fill the office until the next general election of solicitors, which is in exact accordance with the general law."

It follows that appellees are not usurpers of any offices or franchises, but that they have been selected as officers ad interim, as provided by law; and the judgment of the lower court will be affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.

ON REHEARING.

McCLELLAN, J.— (1-3) The rule in proceedings of this character (quo warranto), where the respondent admits that he is holding and exercising the powers and duties of the office, devolves upon him the burden of showing by what authority he holds the office, and that he is in the rightful exercise of its duties and powers. The state has the undoubted right to require of every one who claims to hold and does hold a public office under its statutory or constitutional provisions to show a lawful authority for the exercise of its powers and privileges, and this rule is not changed by statutory provision which permits a private person to join with the state in the inquiry by quo warranto. —*Montgomery v. State, ex rel.,* 107 Ala. 372,, 384, 18 South. 157; *Jackson v. State, ex rel.,* 143 Ala. 145, 147, 42 South. 61; High's Extra. Rem. 629. The information in such a proceeding is sufficient if it avers in general terms, designating the particular office, that the respondent usurps, intrudes into, and unlawfully holds the same.—*Jackson v. State, ex rel., supra.* The statutory system provided in chapter 128 of the Code (section 5450 et seq.) contemplates an appeal from a judgment vindicating the respondent's right to hold the office or declaring him an intruder therein.

[State, ex rel. Knox v. Dillard, et al.]

—Code, §§ 5465, 5469, 5470, 5471. Nevertheless this court has ruled that the statutory system is complete and exclusive, and that the information only (complaint) is a pleading in a civil proceeding, and is demurrable for insufficiency.—*L. & N. R. R. Co. v. State, ex rel. Gray*, 154 Ala. 156, 198, 199, 45 South. 296; Code, § 5461. It is manifest that, whatever may be requisite in other circumstances brought to view by quo warranto, a complaint or information calling into question the rightfulness of one's occupancy of a public office is sufficient if it meets the simple requirements set forth in *Jackson v. State, ex rel., supra.*

(4) The petition filed by this appellant designated the office in which the appellees (respondents) were alleged to be intruders, thereby, if nothing else had been averred, affecting, under the established rule of *Montgomery v. State, ex rel.* and others supra, to place the burden upon the respondents to fully set forth the authority by which they severally held the office, unless, for the purposes of the hearing and adjudication of the inquiry, they (respondents) were content to accept the status shown by the petition and to submit the decision of their right to hold the office upon the status disclosed in the petition. The petition asserted that the respondents attributed their right to the office to the provisions of, and an election held under, the act entitled "An act to establish the court of county commissions for Covington county, Alabama," to be found in Local Acts 1915, pp. 98-103, which, the petition alleged, was unconstitutional and void, for the reasons stated in the opinion of Justice MAYFIELD delivered upon the original submission. The respondents separately demurred to the petition. The court sustained the demurrers, and, the petitioner declining to plead further, the court rendered a judgment dismissing the petition and taxing the petitioner with the costs. The judgment thus rendered was final under our complete, exclusive statutory system. See *L. & N. R. R. Co. v. Gray, supra.* It may be that the judgment dismissing the petition and imposing costs, if affirmed in this court, would be res judicata of the respondents' rightful occupancy of the public office in question—a point not necessary to be decided on this appeal, the proceeding being in the name of the state.—*City Council v. Walker*, 154 Ala. 242, 45 South. 586, 128 Am. St. Rep. 54.

(5) The reasons assigned in the petition for the petitioner's averment of the constitutional invalidity of the act to which the

respondents attribute their rights to the office were not well founded. In the application for rehearing the appellant for the first time asserts the failure to observe section 62 of the Constitution in the passage of the act in the Senate as a ground for declaring the act invalid. That section (62) positively requires the reference of each bill to a standing committee, and that the journals affirmatively show that fact. The journal of the Senate does not affirmatively show, as the Constitution prescribes, the reference of the act to any standing committee. In these circumstances the act never became a law.—*Walker v. City Council,* 139 Ala. 468, 473, 474, 36 South. 23; *Tyler v. State,* 159 Ala. 126, 48 South. 672; *Dunn v. Dean, Judge, etc., infra,* 71 South. 709, opinion on rehearing.

In *State, ex rel. Sigsbee v. City of Birmingham,* 160 Ala. 196, at page 202, 48 South. 843, at page 845, it was said: "As the only constitutional question presented by the demurrer is whether the act of August 8, 1907, is violative of section 104, par. 29, of the Constitution, and that was the only question considered by the court below and in the argument of the case here, we cannot consider other constitutional questions suggested to us."

(6, 8) Unless essential to the decision of an actual case, the constitutionality of an enactment will not be considered or determined by this court.—*State, ex rel. Crumpton v. Montgomery Excise Com'rs,* 177 Ala. 212, 220, 221, 59 South. 294. This rule is, of course, without force or application where the appeal cannot be determined without taking due account of the constitutional validity of an enactment. It is a further rule, long established in this court at the suggestion of safety and convenience in respect of the performance by this court of the grave duty of deciding the constitutional validity of enactments, that this court will not "search for constitutional objections * * * on a general suggestion of unconstitutionality, *without more;* otherwise this court would, upon every such suggestion, be put to the necessity of searching the original journals of both branches of the Legislature to inquire into the history of the act from its introduction into that body to its final passage and approval. This is a duty that rests upon the complaining party, and not upon the court." (Italics supplied.)—*Fitzpatrick v. State,* 169 Ala. 1, 53 South. 1021; *State, ex rel. v. Montgomery Excise Com'rs, supra.*

[State, ex rel. Knox v. Dillard, et al.]

Where the determination by this court of questions involving matters of public concern cannot be had without the consideration and decision of the constitutional validity of enactments, this court must, in the discharge of its grave duty in that regard, take account of such questions, whether raised or argued in the lower courts or not, and decide them, provided the complaining party manifests his good faith and diligence by affording the essential data to advise the court in the premises and to relieve it of the burden of itself making a search of the journals to ascertain the true status of the subject of his complaint. The quotation before made from the *Sigsbee Case* is not in accord with these conclusions; and so to that extent that opinion must be, and it is, qualified.

The petition under consideration brought into question the constitutional validity of the act of 1915, but the reasons therein assigned for the assertion of its invalidity were not good. A general objection by demurrer that an act is unconstitutional has been accepted here as at least raising the issue of constitutional validity vel non.—*Beauvoir Club v. State,* 148 Ala. 643, 650, 42 South. 1040, 121 Am. St. Rep. 82; *Montgomery v. Birdsong,* 126 Ala. 632, 648, 28 South. 522; *Bay Shell-Road Co. v. O'Donnell,* 87 Ala. 376, 6 South. 119. Since the petition would have been and was sufficient under the rule of pleading stated ante as from *Jackson v. State, supra,* and since the general allegation of the unconstitutionality of the act was efficient to invoke and to have justified a ruling, if made, of the court below that the act was invalid, not for a reason alleged, but on a ground or for a reason not particularly specified in the petition, the judgment now rendered cannot be affirmed here when, even for the first time on application for rehearing, the complaining party has fully met the burden of advising the court of the particular well-founded reason or ground for declaring the act invalid. If any other view should be accepted, this court would be placed in the wholly indefensible attitude of affirming a judgment that this court now is brought to know cannot be sustained because the essential basis thereof is an enactment that never became a law. If the trial court had overruled the demurrer, this court could not have pronounced prejudicial error of it.—*Bay Shell-Road Co. v. O'Donnell, supra.*

The act under or in consequence of which appellees can alone assert a right to their offices being void, and the fact of invalidity

being shown, though much belated, to this court, it follows that the application for rehearing must be granted, and that the judgment be reversed. The cause is remanded that appropriate effect may be given these conclusions by the court below.

Reversed and remanded. All the Justices concur, except MAYFIELD and GARDNER, JJ., who dissent.

MAYFIELD, J.— (dissenting).—I cannot concur. I have examined the subject as thoroughly as I am capable of doing, and the following are my views on the subject. I concede that the majority are much more apt to be correct, but I am nevertheless convinced beyond a reasonable doubt that they are in error, for the following reasons:

The majority have misconstrued the nature and purpose of the proceeding in question. The proceeding in the lower court, and in this court on the original hearing, was not to test the constitutionality of the statute declared void on this application for rehearing, but, on the contrary, was to determine which of two or more persons were entitled to hold office under this very statute until the general election of 1916, at which time the successors were to be elected. It is true that constitutional objections were raised as to certain sections of the act, but not as to the whole act; in fact, the trial court and this court hold one of the sections in question valid, and hold that, if the others were pronounced void, it would not affect the whole statute nor the result of this suit.

It was specifically alleged that the act in question became a law, save as to the sections complained of, and the demurrers of course confessed this allegation: Then how or why should the trial court rule against what was alleged by one party and confessed by the other, and award relief not only not asked but inconsistent with that asked? In order that there may be no dispute as to this, I here set out the allegations to this end. After alleging that plaintiff held another office, that of a member of the board of revenue, until that office was abolished, the information or complaint proceeds to recite that: The plaintiff exercised the powers, discharged the duties, and received the emoluments of said office from the 2d day of January, 1915, continuously "until the enactment into law of an act of the Legislature of Alabama entitled 'An act to establish the court of county commissioners for Covington county, Alabama,' which last-named act,

among other things, abolished the said board of revenue and provided that the officers of said board of revenue who may be in office at the time this act goes into effect shall constitute such respective officers of this said court, *   *   * and therefrom continuously performed and exercised the duties, rights, and powers and received the emoluments of the office of associate county commissioners of the court of county commissioners of Covington county, Alabama, up to and including the 8th day of November, 1915, and was and is entitled. under the Constitution and laws of the state of Alabama, including said last-named act of the Legislature, to hold and possess said office of associate county commissioner of the court of county commissioners of said Covington county, and to perform and exercise the duties, rights, and powers and receive the emoluments of the same, until his successor shall be elected at the general election of 1916, and is qualified, as provided for in said last-named act."

On appeal to this court no question can be raised, even on the original hearing here, which was not raised in the trial court. The trial in this court is not de novo. This court has no jurisdiction or right to decide questions on appeal which were not raised in the court below. This is not a rule of propriety or of practice; it is one of jurisdiction and power. On appeal we can only review the questions raised and decided in the court below. I do not understand that the majority deny this last proposition, nor that they now intend to decide to the contrary; but, in my judgment, they do inadvertently decide to the contrary. If I correctly understand the position of the majority, it is that the question now decided was raised in the court below, and therefore necessarily there decided. In my judgment, the error of this position is affirmatively shown by an inspection of the record.

This is not a common-law quo warranto proceeding; it is a statutory civil action. This distinction has been repeatedly pointed out by this court. In quo warranto proper it is sufficient to allege that the respondent is usurping the office or franchise, whereupon the burden or duty rests on him to show his right to hold, or to exercise; but in this statutory civil suit between two parties all the rules of civil pleading and practice prevail.

In the case of *Ham v. Buck*, 156 Ala. 645, 47 South. 126, this distinction is clearly pointed out by Justice DENSON, and the authorities there collected verify the correctness of the holding. It is there said: "Section 3 of the information or complaint alleges

that the respondent usurps, unlawfully holds, and exercises the office of mayor of the town of Elba, which is a public and civil office within the state. In the cases of usurpation and ouster it has been expressly decided that these averments are sufficient against demurrer.—*Jackson v. State, etc.,* 143 Ala. 145, 42 South. 61; *Frost v. State, etc.,* 153 Ala. 654, 45 South. 203. But, when there is sought by this proceeding, 'not only the exclusion of the defendant from the office in controversy, but the installation of the relator, the proceeding is essentially and practically a civil suit, wherein the complaint should set out the facts upon which the relator relies to sustain his title to the office, and so far as practicable, specify the objections intended to be made to the title of the respondent.'—*State v. Price,* 50 Ala. 568; *State, ex rel. Goodgame v. Matthews,* 153 Ala. 646, 45 South. 307. And the statute (Civ. Code, 1896, § 3428) requires that 'the complaint in such action must concisely and clearly set forth the act or omission complained of.'—*State, ex rel. Johnson v. Sou. B. & L. Ass'n,* 132 Ala. 50, 31 South. 375; *L. & N. R. R. Co. v. State, ex rel. Gray,* 154 Ala. 156, 45 South. 296."

Each of the authorities cited supports the holding.

The rule was first announced in the case of *State v. Price,* 50 Ala. 571, where it is said: "The proceeding under our statute commonly called quo warranto, when it seeks, not only the exclusion of the defendant from the office in controversy, but the installation of the plaintiff, is essentially and practically a civil suit, wherein the complaint should set out the facts upon which the plaintiff relies to sustain his title to the office, and, as far as practicable, specify the objections intended to be made to the title of the defendant. The observance of this rule would save defendants much vexation and expense by apprising them at once of what they had to defend."

These statutes have been frequently readopted with this construction placed upon them, and, in my judgment, we ought not now to depart from them.

Under these rules and this interpretation it seems to me that there can be no doubt that the trial court ruled correctly on the demurrer, and that, as the appellant declined to amend or to plead further, no other course was open to the trial than to dismiss the plaintiff's suit.

What the journals of the Legislature show or do not show is a question of fact, and not of law. It is true that courts take

judicial notice of what these journals show, but they are not required to examine them, nor to declare what they show, nor to ascertain or decide what they show, until called upon in the proper mode and on the proper occasion. It is very true that this is often spoken of as a question of law, but this is merely to distinguish it from questions which the jury pass upon. In this sense only is it a question of law. For example, whether or not a given bill was referred to a standing committee is of necessity a question of fact, and not of law. But for Constitutions, that question would have to be found by a jury, because a disputed question of fact. Our Constitution, however, requires the fact of reference to appear on the journals, and therefore limits the proof of the fact to this written document; and the construction of any written document is a question for the court, and not for the jury.

Appellate courts, when exercising purely appellate jurisdiction, as in this cause, have no jurisdiction or power to consider evidence not before the trial court, or to decide questions of law not raised, and therefore not passed upon, in the court below, not even a constitutional question involving the validity of a statute. The following is what this court has heretofore said on this subject.

In *Sigsbee's Case*, 160 Ala. 196, 48 South. 843, this exact question was presented and considered and decided; and, in my judgment, the decision and opinion then rendered are correct. As the opinion in that case is short, but in point and conclusive, I here set it out:

## "ON REHEARING.

"PER CURIAM.—As the only constitutional question presented by the demurrer is whether the act of August 8, 1907, is violative of section 104, par. 29, of the Constitution, and that was the only question considered by the court below and in the argument of the case here, we cannot consider other constitutional questions suggested to us."

When the statute in question became operative, and appellant assumed office under it, the Legislature was in session, and could then amend the journals if they did not show a reference of the bill. Certainly until the Legislature adjourned it was impossible in law or in fact to know what the journals would ultimately

[State, ex rel. Knox v. Dillard, et al.]

show. It seems to me that any other rule would be almost intolerable to the trial courts. Until the journal is printed and bound there is only one copy of that of each house, and it is not usually printed and bound until months after the Legislature has adjourned. For example, no part of the journals were printed when this case was tried, and the whole is not yet printed at this late date. I ask how in law or in fact the trial judge could have known what the journal showed, with reference to the bill in question, without access thereto, or having a certified copy thereof before him. Yet we are here deciding that he should know, or did know, that which no one knew or could know without an inspection of the journal itself, and it had not then been printed, if it had been made up. The following is what other courts have said on the subject:

The Supreme Court of Illinois seems to have dealt oftener, if not first, with the question of the legislative journals' failing to show a compliance with constitutional provisions similar to those of our Constitution; and in the case of *Grob v. Cushman,* 45 Ill. 124, that court said: "It is first insisted that the La Salle county court did not have jurisdiction of the subject-matter of this cause; that the act of the Legislature under which jurisdiction was claimed never became a law in the mode prescribed by the Constitution. And counsel in their argument refer to the journals of the House in support of the position. On the trial below no evidence from the journals was introduced. But it is now urged that, as they are public records, this court will take judicial notice of them, and not require them to be embodied in the evidence. It is true that they are public records, but it does not follow that they will be regarded as within the knowledge of the courts like public laws. Like other records and public documents, they should be brought before the courts as evidence. But when offered they prove their own authenticity. Until so produced they cannot be regarded by the courts."

In the case of *Devine v. Fish Furniture Co.,* 258 Ill. 389, 391, 101 N. E. 539, it is said: "Whether a statute has been passed by the General Assembly in compliance with the constitutional provisions relating to the manner in which a statute must be passed is a question of fact, which must be proven before the cause is submitted to the jury. This question cannot be raised for the first time on a motion to set aside the verdict and for a new trial. On such a motion the only errors which can be considered are

[State, ex rel. Knox v. Dillard, et al.]

such as have intervened on the trial. It is manifest that the court could not err in reference to a matter which was not presented on the trial.

"Counsel for the appellant contend that, inasmuch as the whole Senate Journal was admitted in evidence, this and every other matter it contained were presented, and appellant had the right, on the hearing of the motion for a new trial, to urge anything appearing therein of which it desired to take advantage. The better practice would have been for the court to have permitted the introduction of only such portions of the Senate Journal as had a bearing upon the particular fact then sought to be proven. But in this case the result is the same, as the court expressly limited the application of this evidence to the question of the constitutionality of the amendment to the Fire Escape Act."

In a more recent decision of the last-mentioned court there was presented the same question here under review, and the court again said:

"In the exercise of appellate jurisdiction the court cannot receive evidence of facts not before the court whose judgment is being reviewed, and can only receive evidence while exercising original jurisdiction. The validity of the act could only be questioned in this court on the ground alleged, in some proceeding in which the court has jurisdiction to try issues of fact, and the contents of the journals of the General Assembly must be proved like any other fact.—*Spangler v. Jacoby*, 14 Ill. 297 [58 Am. Dec. 571]; *Devine v. Fish Furn. Co.*, 258 Ill. 389 [101 N. E. 539]."—*Frietag v. Union Stockyards Co.*, 262 Ill. 551, 104 N. E. 901, 902.

The Supreme Court of New York has spoken as follows on the subject in the case of *People v. Supervisors, etc.*, 8 N. Y. (4 Selden), 323, 324:

"The plaintiffs in error insist that the act of April 16, 1851, entitled an act for the enrollment of the militia, etc., is unconstitutional both in the mode in which it was passed and in its subject-matter, apparent on the face of the act. If either of these grounds be established, the judgment of the court below should be reversed.

"The objection on the score of form is divided into three heads: (1) The question on the final passage of the act was not taken by ayes and noes; (2) the ayes and noes were not duly

entered upon the journal; and (3) three-fifths of all the members elected to the Legislature were not present at its final passage.

"The first answer to these objections is that the plaintiffs in error are not in a condition to raise either of them. Where the objection to the validity of a law springs out of the failure of the Legislature to comply with the provisions of the Constitution, which is not apparent upon the act itself, it should be distinctly set forth in the pleadings, or in this case in the return. The adverse party should have an opportunity to controvert the allegation, and to prove a due conformity on the part of the Legislature with the requirement of the Constitution. The legal presumption is that a law published under the authority of the government was correctly passed, so far at least as relates to matters of form.—*Thomas v. Dakin,* 22 Wend. [N. Y.] 9; *Hunt v. Van Alstyne,* 25 Wend. [N. Y.] 608."

The error into which the majority of my Brothers have fallen is well pointed out above, better than I could hope to do. While journals may be considered public records of which judges and courts will take judicial notice, the contents thereof cannot and will not be "regarded as within the knowledge of the courts like public laws."—45 Ill. 124.

This holding of the Illinois and New York courts has been often approved by the highest tribunal in the United States, if not the highest in the world. In the cause of *In re Duncan,* reported in 139 U. S. 449, 11 Sup. Ct. 573, 35 L. Ed. 219, that court, speaking through its Chief Justice, said: "It has been often held by state courts that evidence of the contents of legislative journals which has not been produced and made part of the case in the court below will not be considered on appeal.—*Ill. Cent. Railroad Co. v. Wren,* 43 Ill. 77; *Bedard v. Hall,* 44 Ill. 91; *Grob v. Cushman,* 45 Ill. 119; *Hensoldt v. Petersburg,* 63 Ill. 157; *Auditor v. Haycraft,* 14 Bush. (Ky.) 284; *Bradley v. West,* 60 Mo. 33; *Coleman v. Dobbins,* 8 Ind. 156.

"The distinction is recognized between matters of which the court will take judicial cognizance 'immediately, suo motu,' and those which it will not notice 'until its attention has been formally called to them.'—Gresl. Eq. Ev. 292, 306. As to the last Mr. Gresley says: 'It will not point out their applicability nor call for them, but if they are once put in by either party it will investigate them, and will bring its own judicial knowledge to supply or assist their proof, and will then adopt them as its own

[State, ex rel. Knox v. Dillard, et al.]

evidence independently of the parties.'—*Jones v. United States,* 137 U. S. 202, 216, 11 Sup. Ct. 80, 34 L. Ed. 691.

"As a statute duly certified is presumed to have been duly passed until the contrary appears (a presumption arising in favor of the law as printed by authority, and in a higher degree of the original on file in the proper repository), it would seem to follow that wherever a suit comes to issue, whether in the court below or the higher tribunal, an objection resting upon the failure of the Legislature to comply with the provisions of the Constitution, should be so presented that the adverse party may have opportunity to controvert the allegations and to prove by the record due conformity with the constitutional requirements.—*People v. Supervisors of Chenango,* 8 N. Y. (4 Seldon) 317, 325."

The following cases are to the same effect: *Smith v. Speed,* 50 Ala. 276; *Joiner v. Winston,* 68 Ala. 129; *Hill v. Tarver,* 130 Ala. 592, 30 South. 499; *Bray v. State,* 140 Ala. 172, 37 South. 250; *Foster v. Lee,* 172 Ala. 32, 55 South. 125, Ann. Cas. 1913C, 1335; *Shook's Case,* 177 Ala. 522, 58 South. 390; *K. C., M. & B. R. R. Co. v. Whitehead,* 109 Ala. 495, 19 South. 705; *Shehane v. Bailey,* 110 Ala. 308, 20 South. 359; *Ex parte Steverson,* 177 Ala. 384, 58 South. 992; *Southern Ry. v. Stonewall,* 177 Ala. 327, 58 South. 313, Ann. Cas. 1915A, 987; *Wes. Ry. v. Foshee,* 183 Ala. 182, 62 South. 500; *Lovejoy v. Montgomery,* 180 Ala. 473, 61 South. 597. There are scores of others, some of which are cited in the above cases. In the case last cited it was said: " 'He who assails a statute on the ground that it is unconstitutional assumes the burden of vindicating his position beyond a reasonable doubt.'—*State, ex rel. Meyer v. Greene,* 154 Ala. 254, 46 South. 268; *State, ex rel. City of Mobile v. Board of Revenue and Road Commissioners of Mobile County,* 180 Ala. 489, 61 South. 368. Presumptively, therefore, all statutes are constitutional, and the burden is on him who assails a statute as violative of a particular clause of the Constitution to show that it does, in fact, contravene the particular provision of the fundamental law."

In *Southern Ry. Co. v. Stonewall, supra,* the plea of the general issue was held not to put in issue the constitutionality of a statute on which the rights of the parties depended.

In *Fitzpatrick's Case,* 169 Ala. 1, 5 South. 1021, it is said: "Where the act is not patently invalid on its face, it has been the rule of this court not to search for constitutional objections to an enactment of the Legislature on a general suggestion of uncon-

stitutionality without more; otherwise this court would, upon every such suggestion, be put to the necessity of searching the original journals of both branches of the Legislature to inquire into the history of the act from its introduction into that body to its final passage and approval. This is a duty that rests upon the complaining party and not upon the court. Unless the act is patently unconstitutional on its face, the presumption should be in favor of its validity."

In *Crumpton's Case*, 177 Ala. 212, 59 South. 294, it is said: "It is the established rule of this court to decline to pass upon the constitutional validity of legislative enactments, unless the determination of the questions and rights then before it requires their decision.—*Smith v. Speed*, 50 Ala. 276; *Bray v. State*, 140 Ala. 172, 179, 37 South. 250; *Hill v. Tarver*, 130 Ala. 592, 30 South. 499. It is of course a corollary of this rule, arising from the reason of the rule itself, that, where several or many constitutional questions are presented by the record, that or those only will be considered or determined which is or are necessary to the adjudication of the controversy. In short, this court will not decide any constitutional question respecting the validity of legislation, unless its decision thereupon is 'indispensable' to the determination of that litigation."

In *Wes. Ry. of Ala. v. Foshee, supra,* the constitutionality of a statute was assailed and its invalidity insisted upon. Upon this statute solely depended the rights of the parties on the appeal; and in that case it was said: "We have thought it best not to enter upon a discussion of the only objection which, it occurs to us, may with plausibility be taken against the act, to-wit: That it destroys the right of the parties to a suit to contract and dispose of a disputed claim according to their own concurring notions of right and justice, for the reason that we are satisfied the question cannot be raised by demurrer to pleas as plaintiff undertook to raise it in this case."

In the case of *Brown v. A. G. S. R. R. Co.*, 87 Ala. 370, 6 South. 295, the constitutionality of a statute was challenged in the justice court, and was upheld. On appeal to the circuit court it was again challenged on the same ground, and the circuit court declared the act void. On appeal to this court the decision of the circuit court was affirmed. Some years thereafter, in the case of *K. C., M. & B. R. R. Co. v. Whitehead*, 109 Ala. 495, 19 South. 705, this court, speaking through BRICKELL, C. J., said

[State, ex rel. Knox v. Dillard, et al.]

this of that decision: "Statutes cannot be pronounced unconstitutional at the mere will of courts, or in suits in which they are not involved, not the foundation of any right asserted by the plaintiff, or matter of defense preferred by the defendant. * * *.

"It is not of consequence now within our province to consider whether it is violative of or in strict conformity with the Constitution. That question must remain open until a case may arise in which its decision becomes necessary to the adjudication of the rights of the parties. If it should arise, the court cannot be trammelled by the opinion in *Brown v. Alabama Great Southern R. Co.*, 187 Ala. 370 [6 South. 295]."

There is another reason why I cannot concur. The validity of the statute in question, as a whole, was not assailed. The complaint alleged in terms that the enactment was duly passed by the Legislature. The defect relied on went only to a part of the statute, and not to the whole. The complaint shows that plaintiffs treated it as in part valid, that they held office under it, and they here seek to continue to hold office under it; so assuredly they are not the proper persons to raise the question here decided. It has been repeatedly decided by this court that parties who rely on a statute, and act under it, and receive benefits under it, will not be heard to assail it. In *Baldwin v. Kouns*, 81 Ala. 272, 2 South. 638, it was said: "Neither party is in a position to assail the constitutionality of the statute, both claiming and asserting rights under it as a valid enactment. We have therefore not considered the constitutionality of any of its provisions and do not wish to be understood as intimating any opinion. We have assumed its validity as between the parties to this proceeding solely for the purposes of this decision."

GARDNER, J.— (dissenting).—The majority opinion in this case strikes down the act in question (referred to as House Bill No. 4) for the reason, as they conceive it, that the journal of the Senate fails to affirmatively show an exact compliance with the provisions of section 62 of our Constitution. I consider the question one of the gravest importance—one fraught with great dangers to the stability of our laws. The rule established by an unbroken line of authorities in this state—and, indeed, there has been no diversity in the courts as to the same—is that a statute is presumptively valid and constitutional, and that the burden is

on him who assails the statute as violative of any particular clause of the Constitution to show that it does in fact contravene the particular provision of the fundamental law.

In the recent case of *Lovejoy v. City of Montgomery*, 180 Ala. 473, 61 South. 597, this court said: "It is a solemn thing * * * to strike down a statute. A statute is, at least presumably, an expression by the people of their will through their representatives selected by them for the purpose of making their laws. * * * 'He who assails a statute on the ground that it is unconstitutional assumes the burden of vindicating his position beyond a reasonable doubt.' * * * Presumptively, therefore, all statutes are constitutional, and the burden is on him who assails a statute as violative of a particular clause of the Constitution to show that it does, in fact, contravene the particular provision of the fundamental law."

Clearly, therefore, the burden is upon those who assail the statute here involved to convince this court beyond a reasonable doubt that section 62 of the Constitution has been violated. That section reads as follows:

"No bill shall become a law until it shall have been referred to a standing committee of each house, acted upon by such committee, in session, and returned therefrom, which facts shall affirmatively appear upon the journal of each house."

The journal of the Senate, in reference to the particular bill in question, discloses the following action thereon:

Senate Journal, pages 809, 813 to 815, inclusive, and 824. Fifteenth Day.

### MESSAGE FROM THE HOUSE.

Mr. President:

The House has originated and passed the following bills: * * *

H. 4 Also—

To establish the court of county commissioners for Covington county, Alabama, and sends same herewith to the Senate without engrossment and with notice and proof attached. * * *

W. F. Herbert, Clerk.

### HOUSE MESSAGE.

The House Bills in the foregoing message were severally read once and referred to appropriate standing committees as follows:

[State, ex rel. Knox v. Dillard, et al.]

H. B. 349 to committee on local legislation.

H. B. 287 to committee on revision of laws.

H. B. 474 to committee on judiciary.

Senate Journal, pages 919 and 920. Sixteenth Day.

Mr. Milner, chairman of the standing committee on revision of laws, reported that said committee, in session, had acted on the following bills and ordered same returned to the Senate with a favorable report, and they were severally read a second time and placed on the calendar, to-wit:   *   *   *

By Mr. Hardage.

H. 4. To establish the court of county commissioners for Covington county, Alabama.   *   *   *"

This journal therefore shows that House Bill No. 4 was included in the message from the House, and it affirmatively states that all the bills in the said "foregoing message" were severally read once and referred to appropriate standing committees. In naming the committees and the bills House Bill No. 4 seems to have been omitted. The journal next affirmatively shows that a standing committee—the committee on revision of laws—favorably reported on said House Bill No. 4.

The sole question therefore is whether or not a mere clerical error omitting House Bill No. 4 in the designation of the committee shall work the destruction of a law and cause it to be declared violative of section 62 of the Constitution. That the language used affirmatively shows a reference of the bill to a standing committee and a report thereon by a designated standing committee, is without question. It is argued, however, that as the journal fails to disclose the particular committee to which the bill was referred, we are not permitted to assume or to infer that the committee reporting the bill was the committee to which it had been referred. This argument, in my opinion, is fallacious, for the simple reason that it indulges a presumption against the law, and a presumption against a due performance of duty by sworn officers, when by an unbroken rule of all the authorities the presumption is directly to the contrary, and is in favor of the regularity of the passage of the law and the due performance of their duties by the lawmakers and sworn officers of the state. In my opinion, the reasonable inference to be drawn from the language used is that the committee reporting the bill was the committee to which it had been referred. I find nothing in section 62 of the Constitution which prohibits the court from hold-

ing that that section has been complied with by a construction of the journal based upon a reasonable and logical inference from the language there used. To do this we do not have to presume a fact, but simply, upon the facts stated in the journal, as reasonable beings, to draw a reasonable inference therefrom. The language above quoted from the journal would clearly lead to the natural inference that the committee reporting the bill was the committee to which it had been referred. Does any one on this account have a reasonable doubt that such in fact was the case? Indeed, does it not appear—reasonably appear—that the omission to designate House Bill No. 4 in naming the committees was but a clerical error?

We have no case holding to the contrary. None of our decisions hold to so strict and literal an interpretation of this section of the Constitution as do the majority in this case. The case of *Homrighausen v. Knoche*, 58 Kan. 646, 50 Pac. 879, is, to my mind, directly in point, and sustains the conclusion I have reached here. See, also, *Osburn v. Staley*, 5 W. Va. 85, 13 Am. Rep. 640.

If it appears by reasonable and natural inference that this section has been complied with, I am unable to see what harm could result; but, on the other hand, it appears to my mind that the provision of section 62, under the construction here given, would be fraught with much more mischief than was ever the evil attempted to be remedied by it. It is a well-recognized rule that Constitutions are to be given liberal construction, and should not be technically construed. A Constitution should be interpreted to carry out the great principles of government, and not to defeat them. As said by Mr. Black in his work on Constitutional Law (2d Ed.) p. 67:

"A Constitution is not to be interpreted on narrow or technical principles, but liberally and on broad general lines, in order that it may accomplish the objects of its establishment and carry out the great principles of government. * * * Constitutions * * * 'declare the organic law of a state. They deal with larger topics and are couched in broader phrase than legislative acts or private muniments. They do not undertake to define with minute precision in the manner of the latter, and hence their just interpretation is not always to be reached by the application of similar methods.' 'A Constitution of government does not, and cannot, from its nature, depend in any great degree upon mere verbal criticism, or upon the import of single words.' "

The construction placed upon this section of the Constitution by the majority is, in my opinion, violative of this well-recognized rule. I am further of the opinion that the conclusion reached in this case is diametrically opposed to the conclusion reached in the case of *Walker v. City of Montgomery,* 139 Ala. 468, 36 South. 23, cited by all subsequent cases upon this provision of the Constitution, and recognized as the leading authority in this state on the question.

The citation of the case in the majority opinion discloses that it is still considered the leading authority; and yet in that very case the court was bound to hold that the provisions of section 62 of the Constitution had been complied with, from a natural and reasonable inference drawn from the language of the journal. That case presents the exact converse, as I view it, of what we have here. No one questions the proposition that under the language of section 61 it is of equal importance that the journal affirmatively disclose that the committee to which the bill was referred had acted upon it in session. In short, it must be conceded that it is just as necessary for the journal to affirmatively show an action by the committee to which the bill was referred as it is to show to what committee it was referred.

The *Walker Case, supra,* discloses that the journal affirmatively showed that the bill was referred to the committee on local legislation. On page 479 of the opinion, speaking of the language of the journal respecting the return of the bill to the House by that committee, is the following:

"The journal, it is conceded, does affirmatively show that this bill was referred to the committee on local legislation, a standing committee of the house. In respect of action in committee on the bill and of its return to the House the journal contains the following entries:

" 'BILLS ON SECOND READING.

" 'The chairman of the several standing committees reported that the committees, in session, had acted favorably upon the following bills:

" 'H. 467. To provide for the apportionment and collection of unpaid taxes in any new county formed under the Constitution and laws of this state.

" 'H. 29. To amend subdivision 7 of section 1144 of the Code of Alabama.

. " 'H. 435. To authorize street railway companies in this state to increase their capital stock.

\*      \*      \*      \*      \*      \*      \*      \*      \*

" 'S. 109. To alter and rearrange the boundaries of the city of Montgomery, extending the corporate limits of said city. (Note. February 12. S. 109 reported without recommendation and placed upon the calendar.)

" 'H. 193. To amend section 3504 of the Code of 1896.

\*      \*      \*      \*      \*      \*      \*      \*      \*

" 'The above and foregoing bills, having been returned to the House, were read a second time and placed on the calendar.' (We have substituted asterisks in the places of many other Senate and House Bills.)

"Upon considerations already adverted to, we are of opinion that these entries upon the journal affirmatively show that Senate Bill 109 was returned from the committee into the House, and that the action had by the committee was had in a session of the committee."

I have referred to the House Journal of 1903, and find that the above quotation taken therefrom and set out in the opinion as quoted above truly represents all that the journal discloses in reference thereto, with the exception, as noted, of a number of other bills included in the general list. Let it therefore be noted that the journal of the House in that case did not affirmatively disclose that the bill had been acted on by the committee on local legislation, to which it was referred. The only reference in regard thereto is the following: "The chairmen of the several standing committees reported that the committees in session had acted favorably upon the following bills."

It does not state, and it is nowhere disclosed except by natural inference, of course, that the committee on local legislation fa‑vorably reported Senate Bill 109, there under consideration.

The argument made in the case here under review is equally applicable to the record as shown in the opinion in the *Walker Case*. Who can say that the journal of the House in that case affirmatively shows that the committee on local legislation favorably reported that bill, or whether it might have been included in the report of another committee? But the court drew from the language used the natural inference that the committee to which the bill had been referred was the committee which had favorably reported it. That is the exact converse of the situation we

have here. The Senate Journal here does show a reference of the bill to a standing committee and a report thereon by a standing committee—the commitee on revision of laws. Why, then, should we not draw the reasonable and natural inference that the committee reporting the bill was the committee to which it had been referred, just as the court in the *Walker Case* drew the natural inference that the committee to which the bill had been referred was the committee which made the favorable report thereon? This question was fairly before the court in the *Walker Case*. It seems to have been there treated as a matter of course by the able counsel for the respective sides. It cannot be said to have been overlooked by the writer of the opinion. He refers to the "general statement" on the journal, in which this bill must be held to be included, saying:

"So that part of the *general statement* [italics supplied] would stand as applying as well to S. 109 as to the other bills embraced in the entry."

Not only that, but the very language of the journal is set out in full in the opinion in that case. The opinion concludes:

"We concur with the city court in holding the act * * * was enacted in consonance with the requirements of section 62 of the Constitution."

The writer of the opinion in that case is regarded by the legal profession as having been one of the ablest jurists ever on the bench of this state.

In my opinion, therefore, the conclusion reached by the majority in this case is in the very teeth of the conclusion of the court in the *Walker Case, supra*. Both decisions cannot consistently stand as the law of this state. The conclusion reached in the *Walker Case* is consistent not only with the rule in regard to the liberal construction of our Constitution, but with sound reason and common sense, and I can see no good cause for departing therefrom.

I forego a further expression of my views, but the question is one of such great importance that I felt it not inappropriate to thus briefly state them. I therefore cannot concur in the conclusion reached by the majority, and respectfully dissent.

MAYFIELD, J., concurs in the foregoing opinion.